IN THE

# SUPREME COURT

OF

# OREGON.

Argued. June 2, petition dismissed July 6, 1920.

## SCHOOL DIST. No. 24 *v*. SMITH.

(191 Pac. 506.)

**Mandamus—Demurrer to Pleading Admits Truth of Material Statements.**

1. A demurrer to petition in *mandamus* admits the truth of all material statements in pleading against the sufficiency of which it is directed.

**Taxation—Levy Mandatory Only Where Statute Required Tax to be Levied for a Definite Purpose.**

2. Where the legislature has specifically required the levy of any tax by the County Court for a definite purpose, the law is mandatory, and such tax must be levied, but where the court is authorized but not directed, to raise a tax for a given purpose, the levy is discretionary.

**Taxation—Mandatory Taxes to be First Levied to Keep Within Constitutional Limit.**

3. In order that Article XI, Section 11, of the Constitution (see Laws 1917, page 12), limiting amount to be raised by tax levy to amount levied during preceding year, plus 6 per cent, the levy of any discretionary tax should be postponed until all mandatory taxes have been levied in full.

**Schools and School Districts—Levy of $10 per Capita School Tax Mandatory.**

4. The levy of a $10 school tax *per capita* for all school children in county under Laws of 1919, page 213, *held* mandatory.

**Taxation—Taxes Levied for School Purposes cannot be Used for County Purposes, and Vice Versa.**

5. Taxes levied for school purposes cannot, when collected, be used for county purposes, nor can taxes levied for county purposes

be used for school purposes, the County Court's authority ceasing with the making of the levy, and the money, when collected, becoming automatically the money of the school districts according to their proportionate rights, where tax was levied as a school tax, and becoming county funds when levied for county purposes.

**Evidence—Court will Take Judicial Notice When Taxes are Paid and County Expenses Audited.**

6.   Court will take judicial notice of the time when taxes are paid, and that the current expenses of the county are audited and allowed each month.

**Mandamus—School District's Remedy on Insufficient Levy of Taxation not Mandamus Against County Superintendent.**

7.   Where the $10 *per capita* school tax was not levied in full within the constitutional limitation on taxation under Article IX, Section 3, of the Constitution, Article XI, Section 10, and Article XI, Section 11 (see Laws 1917, page 12), as required by Laws of 1919, page 213, *mandamus* will not lie in action in which county superintendent is only defendant, to compel him to apportion to a school district the share of money to which it would have been entitled if the full tax had been levied.

**Injunction—Injunction Against County Superintendent no Defense in Subsequent Mandamus Proceeding by School District not Party to Injunction Suit.**

8.   Injunction restraining county school superintendent from apportioning certain funds to school district, granted in action to which the district was not a party, is no defense in *mandamus* by the district to compel apportionment of such funds, the district not being bound by the decree in the injunction suit, even though it could have, but did not, intervene therein.

Original Proceedings in *Mandamus* in Supreme Court.

Department 2.

The plaintiff is an organized school district of Marion County, embracing the corporate limits of the City of Salem. The defendant is the duly elected, qualified, and acting county school superintendent of Marion County.

This is an original proceeding in *mandamus,* in which it is alleged that, according to the school census of the plaintiff, there are 4,208 individuals between the ages of four and twenty years who on October 25, 1919, were actual residents of the dis-

trict; and that on November 28, 1919, after the census was taken, the clerk of the plaintiff forwarded a certified copy thereof to the defendant, who examined and found it to be correct, and in December following filed a report with the county clerk of Marion County, certifying that fact. It is then alleged that at its December term in 1919 the County Court of Marion County levied a tax for school purposes upon all of the taxable property within the county, sufficient to produce at least $10 *per capita* for all of said children; that thereafter the county assessor made a certificate in duplicate of the amount to be assessed for school and other purposes, and secured from the county clerk a warrant in the name of the State of Oregon, authorizing the collection of the tax for school and other purposes by the sheriff of said county as tax collector; and that the assessor attached the warrant to the assessment-roll, and delivered the same to the sheriff in January, 1920. It is said that by virtue of this assessment and warrant the sheriff has collected a sufficient amount of taxes from the tax-roll of 1919 to pay each school district within the county, including the plaintiff, its full amount of $10 *per capita;* that in May, 1920, the defendant exercised his option and right to divide said county school fund among the several school districts, and apportioned the amount of $7,552.80. to the plaintiff; that he made an order, directing the county treasurer of Marion County to pay that sum to the plaintiff, but that the defendant fails, neglects, and refuses to apportion to the plaintiff the entire amount of the school fund to which it is entitled, to wit, $15,944.80, although demands therefor have been made by the plaintiff; that by reason of the failure and neglect of the defendant to apportion the plaintiff's share so collected, the latter has been deprived

of the use and benefit of $8,392.00, which failure on the part of the defendant is without any right or justification; and that it became and now is the right and duty of the defendant to apportion the whole amount of the fund to the several school districts of Marion County.

The petition states that in November, 1919, the plaintiff formulated an itemized budget showing its estimated receipts and expenditures for the current year, including money which it would receive from the tax to be so levied and collected by the county; that it duly and regularly submitted such budget for approval or rejection, to its legal voters at a special school election duly called and held December 8, 1919, at which time it was approved and accepted by a majority of the voters; that the district is without funds, and has been compelled to borrow a large amount of money to carry on its schools; that the money so due is required to enable it to defray its expenses for the remainder of the current year; that it has no plain, speedy or adequate remedy at law; and that the defendant cannot give any valid or legal excuse for not performing the duty enjoined upon him by law. The petition prays for an alternative writ, requiring the defendant to apportion unto the plaintiff the further sum of $8,392 as its share of said fund.

Answering, the defendant admits that at its December term in 1919 the County Court pretended to levy for school purposes a tax of at least $10 *per capita* for each of the school children within such county, but that such levy was a violation of Article XI, Section 11, of the state Constitution (see Laws 1917, page 12), commonly known as the 6 per cent limitation law; that by reason thereof and because of a writ of injunction issued out of the Circuit Court

of Marion County in a suit wherein Ed A. Jory was
plaintiff and Marion County, a municipal corporation,
its sheriff, school superintendent, judge and com-
missioners only were defendants, the collection of
said pretended levy was and is permanently enjoined
in so far as it is in excess of $8.25 *per capita* for
each of such school children; that no other or greater
amount has been collected; that $8.25 *per capita* is
all that will be available to the various school dis-
tricts from said pretended levy on the 1919 tax-roll;
that the amount levied on the 1918 tax-roll for school
purposes, plus 6 per cent thereof, is $108,643.46; that
such sum only was lawfully levied, is now being col-
lected, and amounts to $8.25 *per capita* and no more;
that the gross amount to which plaintiff will be en-
titled is $34,716.00; and that when all of the 1919
taxes have been collected the plaintiff will be entitled
to an additional amount of $14,164.13 and no more,
which the defendant offers and agrees to apportion
as such funds are collected. The defendant declares
that he now refuses, and will continue to refuse, to
apportion to the plaintiff the additional sum of $7,634,
or $1.75 *per capita*, for the reason that he has been
permanently enjoined and restrained from doing so
by the decree in the Jory suit. Copies of the com-
plaint, demurrer thereto, and decree rendered therein
are attached to and made a part of the answer
here. It is further alleged that the sum of $7,634
claimed by the plaintiff is included in and made a
part of the injunction granted in that suit, whereby
the defendant was restrained and enjoined from dis-
bursing the same or any part thereof; and that by
reason of such litigation and the constitutional limi-
tation the plaintiff is estopped from making or main-
taining any of the allegations in its writ or petition.

It appears from the pleadings in the Jory suit that after the County Court of Marion County had prepared its budget for the current year, providing for the levy of taxes to the amount of the 6 per cent constitutional limitation, "in order to raise the amounts required by the said acts of the said legislature" (particularly Chapter 156, Laws 1919), it became "necessary to levy a tax on all the taxable property within Marion County in the sum of $25,470.08, over and above the taxes hereinbefore levied for the current year, and over and above the amount of tax levied for the preceding year for common school purposes plus six per cent thereof"; and that it was therefore "ordered, adjudged, determined, and declared that in compliance with the said acts of the said legislature a tax in the sum of $25,470.08 be, and the same is hereby, levied upon all of the taxable property within Marion County, Oregon, for common and county school purposes in addition to the amount of $106,139.92 hereinbefore levied and over and above the six per cent limitation provided by the Constitution of this state." The order recites "that the said tax provided by the said legislature is in addition to the 6 per cent limitation provided by law, and that it is necessary, in order to comply with the various laws above referred to, to levy the same." Like orders were made for the levying of other taxes under similar provisions of other laws, the additional taxes amounting in all to $48,623.28.

A copy of the budget, showing the specific items and amounts for which all taxes were levied, pleaded in the Jory suit, is attached to and made a part of the defendant's answer in the instant case.

The demurrer of the defendants in the Jory suit was overruled and the defendants declined to plead

further. For want of an answer the Circuit Court rendered a decree to the effect that all taxes levied in excess of the 6 per cent limitation, including the $1.75 *per capita* school tax, were null and void; that the defendants should be restrained from collecting or attempting to collect, such excess taxes, and that the disbursing, expending, or apportioning of any of the funds of the county in carrying out the directions contained in Chapter 156, Laws of 1919, as they might exceed the 6 per cent limitation of levy for common school purposes, should be enjoined; in legal effect holding that, by the levy which the County Court made, the plaintiff was entitled to only $8.25 *per capita* for each child of school age, instead of $10, which should have been raised by taxation under the law of 1919. Although the Jory suit was brought under the name of that plaintiff only, as a taxpayer, it is alleged in the complaint that it was instituted "in behalf of himself and all other persons similarly situated." The defendant here was made a defendant there, but the plaintiff school district was not a party, and did not intervene. It is now seeking to compel the defendant to do what the decree in the Jory suit enjoined him from doing.

The plaintiff demurred to the defendant's answer for the reason that the same did not "state facts sufficient to constitute an answer and defense to said alternative writ of *mandamus*," the merit of which is the vital question here.           DISMISSED.

*Mr. Walter C. Winslow* and *Mr. Walter E. Keyes,* for the petition.

*Mr. Max Gehlhar,* District Attorney, *contra.*

JOHNS, J.—1. It is elementary that a demurrer admits the truth of all material statements in the

pleading against the sufficiency of which it is directed. Hence it must be assumed that the County Court made the levy for county purposes and the two different levies for school purposes at the time and in the manner and form hereinafter set out.

Chapter 156, Laws of 1919, provides:

"For the purpose of creating a county school fund, the County Courts of the several counties of this state are hereby required to levy at the same time other taxes are levied, a tax for school purposes upon all the taxable property of the county, which aggregates an amount which shall produce at least $10 *per capita* for each and all of the children within the county between the ages of four and twenty years, as shown by the then preceding school census, which said taxes shall be collected at the same time, in the same manner, and by the same officers as other taxes are collected; provided, that the *per capita* amount so levied in any county shall not be less than the *per capita* amount of the school tax levied in the county for the year 1919."

This statute is direct and positive, and by its terms it was the legal duty of the County Court to make a sufficient levy to raise $10 *per capita* for all school children in the county. Article IX, Section 3, of the Oregon Constitution provides:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Article XI, Section 10, originally read:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion; but the debts of any county at the time this constitution takes effect shall be disregarded in estimating the sum to which such county is limited."

This section was construed by this court in *Grant County* v. *Lake County,* 17 Or. 453 (21 Pac. 447), and *Municipal Security Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174), where it was held that in the administration of its affairs debts of a certain class were thrust upon the county by operation of law, and were not within the constitutional limitation, such as' salaries, and fees of witnesses and jurors, ·and that the $5,000 limitation applied only to voluntary indebtedness. By an initiative measure approved December 5, 1916, Article XI was amended by the addition thereto of Section 11, reading as follows:

"Unless specifically authorized by a majority of the legal voters voting upon the question neither the state nor any county, municipality, district or body to which the power to levy a tax shall have been delegated shall in any year so exercise that power as to raise a greater amount of revenue for purposes other than the payment of bonded indebtedness or interest thereon than the total amount levied by it in the year immediately preceding for purposes other than the payment of bonded indebtedness or interest thereon plus six per centum thereof; *provided,* whenever any new county, municipality or other taxing district shall be created and shall include in whole or in part property theretofore included in another county, like municipality or other taxing district, no greater amount of taxes shall be levied in the first year by either the old or the new county, municipality or other taxing district upon any property included therein than the amount levied thereon in the preceding year by the county, municipality or district in which it was then included plus six per centum thereof; *provided further,* that the amount of any increase in levy specifically authorized by the legal voters of the state, or of a county, municipality, or other district, shall be excluded in determining the amount of taxes which may be levied in any subsequent year.

"The prohibition against the creation of debts by counties prescribed in Section 10 of Article XI of this Constitution shall apply and extend to debts hereafter created in the performance of any duties or obligations imposed upon counties by the Constitution or laws of the state, and any indebtedness created by any county in violation of such prohibition and any warrants for or other evidences of any such indebtedness and any part of any levy of taxes made by the state or any county, municipality, or other taxing district or body which shall exceed the limitations fixed hereby shall be void."

Except by a vote of the people, as above stated, the effect of this amendment was to place a 6 per cent limitation instead of the existing restriction upon all revenues derived from taxation for the current year, to nullify the force of the above decisions as to a distinction or priority of debts of any class or character, and to bring all kinds of indebtedness within the constitutional limitation.

The original levy by the County Court of Marion County was based upon a budget for the estimated expenses of the county, including courts, jurors, witnesses, bailiffs and reporters, also the following items: Scalp bounties, $150; advertising, $600; expenses of exhibit at state fair, $800; indemnity for diseased cattle slaughtered, $500; fire protection, $375; fees under dog tax law, $800; "improvement, maintenance and construction of roads, bridges, and ferries, and salaries of deputy road masters, patrolmen and assistants," $156,784.63; under provision of market road law, Chapter 431, Laws of 1919, $52,300; interest on county road bonds, $9,000. A total of $327,630.60 was levied for county purposes, $189,610.85 for state purposes and $107,456.02 for county school and library purposes, making a grand total of $624,697.47, which equals the amount of the tax-roll of the preceding year, plus 6 per cent thereof.

2, 3. Where the legislature has specifically required the levy of any tax by the County Court for a definite purpose, the law is mandatory, and such tax must be levied. However, when the County Court is authorized, but not directed, to raise a tax for a given purpose, such levy is discretionary. The 6 per cent limitation must be respected and enforced; and when the legislature has directed the levy of a special tax, all taxes of that class should first be levied and included within the constitutional limitation. The levy of any discretionary tax within the limitation specified, by any board or County Court, should be postponed until all mandatory taxes have been levied in full. That is to say, the right of the County Court to levy and collect a discretionary tax is subject and inferior to the power of the legislature to direct the levy and collection of a mandatory tax.

4. As stated, the levy of the $10 *per capita* tax was mandatory. An examination of the different statutes under which the County Court acted in making its primary levy shows that in many instances the items were not mandatory, but only discretionary. For this reason such levies should have been postponed until the $10 *per capita* school tax was levied in full. Although that is the law, yet the fact remains that the County Court did not originally levy the full amount of the school tax, but included in its own budget items of discretionary taxes which were subject and inferior to the levy in full of the $10 *per capita* tax. For example, the primary levy for county purposes includes an item of $52,300 for market roads, and another of $156,784.63 for improvement, maintenance, and construction of roads, bridges, and ferries, salaries of road masters, etc. Although the legislature has empowered the County

Court to make a levy for such purposes, it has never directed it to do so, but has simply vested such discretionary power in the County Court. Whatever may be said in favor of good roads, it was never the purpose or intent of the legislature that county roads should be constructed and maintained at the expense of the public schools. For the one, it has said that the County Court *may* levy a tax, and for the other that it *must* do so. The same is true as to all similar items. The legal effect of what the County Court did was *pro tanto* to nullify a mandatory act of the legislature through the exercise of discretionary power vested in it by other legislative acts. Authority to levy taxes is primarily vested in the legislature, and it cannot be presumed that it was ever the intent of that body to delegate that power to another or inferior board in such a manner as to defeat or impair its original right. If the County Court has a discretionary power to reduce the amount of the school fund which has been authorized by a mandatory law of the legislature, it must follow that it would have the legal right to ignore the law *in toto* and to refuse to levy any tax whatever for school purposes. Within the constitutional limitation it would have the authority to take all money which the legislature intended for school purposes, and divert it to other uses within its discretion. That is not the law. We hold that as to the constitutional limitation the power of the County Court to levy a discretionary tax is subordinate to its mandatory duty to levy a tax under a specific act of the legislature.

The levy as made was a matter of public record, and at the time the plaintiff had a legal right to compel the County Court to make it in the manner and form provided by law. Although the school dis-

trict was not a party to the Jory suit, it had a right to intervene, and there litigate the questions which are now at issue.  In effect, the plaintiff seeks in the instant proceeding to have this court set aside the action of the County Court and the restraining order issued against the defendant in the Jory suit.  After the levy was made and the money was collected it was placed in special funds, the amount of which corresponds to the items in the different budgets.  For this reason, the defendant contends that there is no fund to apportion or upon which a warrant can be drawn to meet the plaintiff's demand, and that under the existing facts the attempted apportioning of any larger fund would be a vain act.  With the county school superintendent as the sole defendant in the instant action, we do not know how any money in a county fund could be taken therefrom and placed in a school fund for the use and benefit of the plaintiff.

5. Although the County Court is authorized and directed by the legislature · to make such a levy for school purposes, when made it is for the sole use and benefit of the various school districts of the county. The authority of the County Court then ceases. When the tax is collected it automatically becomes the money of the school districts according to their proportionate rights, and thereafter the County Court has no interest whatever in the fund.  For the same reason, when a tax is levied for county purposes and is collected it becomes and is a county fund, to be used and expended for county purposes only, and no authority is anywhere given to transfer county money to the school fund, or school money to the county.  Whatever may have been the legal duty of the County Court, the fact remains that within the 6 per cent limitation it levied a school tax of $8.25 *per capita* only, and that to provide for the defi-

ciency it undertook to make an additional levy of $1.75 *per capita* over and above the 6 per cent limitation. Each of such levies is certain, separate and distinct from the other.

The order of the County Court in which the $8.25 *per capita* school tax is levied recites that on December 31, 1919, after a fully itemized estimate was duly made and published, "together with notice of the time and place at which same might be discussed with the County Court," and accompanied by a published statement "showing the total of all taxes for the ensuing year levied by any road or school district, city, town, municipality, port or other tax levying authorities within," the jurisdiction of the County Court:

"This being the time and place fixed by the court for a hearing on said budget, said court met pursuant to said notice, in the county courtroom in the courthouse in the City of Salem, Oregon, to hear any argument of any taxpayer subject to said tax levy in favor of or against any proposed tax levies, and whereas several taxpayers appeared for a discussion of said levies, and no objections being made or filed to any portion of said estimate, or the levying of any taxes described in the same, and it further appearing that the amounts hereinafter stated are necessary and proper for the conduct of the respective branches of the county government and for the respective purposes indicated herein.

"It is, therefore, ordered and it is hereby determined and declared that the following amounts of taxes be levied upon the current assessment-roll, and that said amounts be levied for the purposes as hereinafter set forth."

An itemized list of such taxes follows. It is further ordered that in order to raise said amounts and those certified by the state tax commission, the county assessor levy the following: For state purposes,

$189,610.85; for county school and library purposes, $107,456.02; and for county purposes, $327,630.60, totaling $624,697.47.    This is the order by which the County Court made the levy of $8.25 *per capita* for school purposes.   Thereafter, and on the same day, the County Court made the following order:

"Now on this 31st day of December, 1919, it appearing that pursuant to Section 4042 of Lord's Oregon Laws as amended by Chapter 84 of the General Laws of Oregon for the year 1911 as amended by Chapter 64 of the General Laws of Oregon for 1917, as amended by Chapter 156 of the General Laws of Oregon for the year 1919, that in order to raise the amounts required by said acts of said legislatures it is necessary to levy a tax on all the taxable property within Marion County in the sum of $25,470.08, over and above the taxes hereinbefore levied for the current year, and over and above the amount of tax levied for the preceding year for common school purposes plus 6 per cent thereof, (the said acts of the said legislatures having increased the amounts required for the above purpose in the amount of 25 per cent, over and above the amount levied for the said purpose in the preceding year, in addition to the increased amounts required to take care of the additional number of children of legal school age as appears by the school census).

"It is, therefore, ordered, adjudged, determined and declared, that in compliance with the said acts of the said legislature a tax in the sum of $25,470.08 be and the same is hereby levied upon all of the taxable property within Marion County, Oregon, for common and county school purposes in addition to the amount of $106,139.92 hereinbefore levied, and over and above the 6 per cent limitation provided by the Constitution of this state."

Similar levies for different purposes, made in the same manner, are included therein, making a total of $48,623.28.  By this order the County Court levied

the $1.75 *per capita* school tax. The collection of all of such levies is enjoined in the Jory suit.

6. The order providing for the $8.25 *per capita* tax recites that several taxpayers appeared for discussion of the levy; that no objections were made to any item of the estimate or the levy of any tax therefor, and that the amounts thereof are necessary and proper for the conduct of county affairs and the purposes indicated. That is to say, prior to the making of the original levy by the County Court all parties, including the plaintiff, had legal notice of the items and amounts thereof for which the levy was made, and no remonstrance was entered. Speaking from the record, the plaintiff had knowledge of and acquiesced in what the County Court did from December 31, 1919, to May 10, 1920, when this proceeding was commenced. This court will take judicial notice of the time when taxes are paid, and that the current expenses of the county are audited and allowed each month. It is fair to assume that at least half of such taxes have been collected to date, and that something near half of that amount has been expended for county purposes.

7. As stated, the county school superintendent is the only defendant in this action. That official has nothing whatever to do with the levying of taxes for any purpose, and has no authority over county funds. His sole duty in this matter is confined to certifying the number of children of school age in the various districts of the county, and apportioning the school fund to the districts when the tax has been collected. It appears from his answer that he has apportioned, and will continue to apportion as collected, all of the school tax which was levied by the County Court within the 6 per cent limitation, and that the county and its officers, including the defendant, are enjoined

from collecting or paying out any moneys received from the tax levied by the County Court over and above that limitation. Assuming that the plaintiff once had a prior right to have its tax levied by the County Court in preference to a discretionary tax for a number of items, there is nothing before this court from which it can be determined how much of such discretionary tax has been collected or paid out, or to whom it has been paid. The defendant does not have any knowledge of such facts, or any control over the fund, and he has no authority to make a transfer of moneys from one fund to another.

8. Assuming that in the ordinary course of business a large percentage of such tax has been collected and expended, that portion thereof, at least, has passed beyond the jurisdiction of this court, and the part remaining could not be ascertained or determined without an accounting with all of the necessary parties in court, which could not be had in this kind of a case. The county and the county treasurer would be necessary parties in any such proceeding. Under the authorities, even though the plaintiff did not intervene, it is not bound by the decree in the Jory suit. Neither is the fact that the defendant was enjoined there a defense to the present action. Yet many of the facts alleged in the answer and admitted by the demurrer are material and important to this decision.

After the two separate levies were made, as above stated, the tax-rolls were extended, showing the amounts of the levies, the purposes for which made, and to whom the money collected should be paid. The plaintiff has acquiesced in and permitted such acts to be done and the moneys to be collected and paid over

97 Or.—2

to the county as its own, without any objection prior to the filing of its petition in this court on May 10, 1920. The time has long since passed for making another or different levy or revising or correcting the one which was made.

The answer alleged and the demurrer admits that there is no school fund which the defendant can now apportion or upon which a warrant can be drawn for the payment of $1.75 *per capita* for each pupil to the various school districts. This court has held that a county school superintendent cannot be compelled by *mandamus* to make an apportionment of the school fund among the several districts unless it is made to appear that there is some fund in the treasury available for that purpose: *State ex rel. Booth* v. *Bryan,* 26 Or. 502 (38 Pac. 618). There is no available school fund to meet the plaintiff's demand in this action. Both parties cite and rely upon *State ex rel.* v. *Stannard,* 84 Or. 450 (165 Pac. 566, 571, L. R. A. 1917F, 215). That was a proceeding in *mandamus* by the state on the relation of the Governor, in which Stannard as county clerk, the sheriff, county judge, and commissioners were defendants, to compel them to give the necessary notices for a special election and to make provision therefor. That case was brought direct against the county officers who had the power and whose duty it was to prepare notices and provide for the election. They had refused to perform a duty enjoined upon them by law. The instant proceeding was commenced against the county school superintendent only, to compel him to apportion a school fund which is not shown to exist. A large portion of the tax had been collected and placed in the funds of the county, and was subject to the control of the county only. In the ordinary course of business a considerable part of it has been paid out,

and the unexpended remainder is in the control and possession of the county, mingled with its other moneys, over which the county school superintendent, the only defendant in this action, has no authority.

Under the facts shown to exist here it was the legal duty of the County Court to make a levy for school purposes sufficient to raise at least $10 *per capita* for all children of school age within the county and to have made it all within the 6 per cent limitation. As at present advised, we do not know what remedy, if any, the plaintiff may now have. But in any proceeding all necessary parties should be made defendants, all material facts should be alleged, and the court should have jurisdiction of the subject matter and of the fund sought to be reached.

For the reasons above stated the petition is dismissed.                    PETITION DISMISSED.

HARRIS, J., and BEAN and BENNETT, JJ., concur.