385 P.2d 649

**TREE FARMERS, INC., a corporation,**
*Plaintiff-Appellant,*

v.

**C. H. GOECKNER, County Assessor,**
*Defendant-Respondent.*

No. 9184.

Supreme Court of Idaho.

Oct. 7, 1963.

Wayne C. MacGregor, Jr., Pros. Atty., Idaho County, Grangeville, for respondent.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Allan G. Shepard, Atty. Gen., Warren Felton, Asst. Atty. Gen., Boise, amici curiae.

Ray McNichols, Orofino, Idaho, amicus curiae.

McFADDEN, Justice.

Plaintiff-appellant, hereinafter referred to as appellant, is a Montana corporation, qualified to do business in Idaho. Defendant C. H. Goeckner, referred to as respondent, was at all times pertinent to this action, the duly elected qualified and acting assessor of Idaho County, Idaho.

This action was instituted by appellant to restrain respondent assessor from collection of personal property taxes for 1958 and 1959 on logs severed by appellant from United States Forest Service lands in the Lolo National Forest in Idaho County, pursuant to a contract between appellant and the Forest Service. A temporary restraining order was issued by the trial court. Later the cause was submitted to the court on facts as stipulated by the parties. The trial court entered a decree in favor of respondent assessor, ruling the assessment and tax to be valid, and dissolving the temporary restraining order. It is from this judgment or decree that this appeal was taken.

From the stipulated facts it appears that appellant and the Forest Service entered into a written contract entitled "Timber Sale Contract", dated September 5, 1958. The contract required a performance bond which appellant submitted. By the contract the Forest Service agreed to permit appellant to cut the timber described therein from designated areas, and appellant agreed to cut, purchase, and remove such timber subject to the provisions of the agreement. The contract contains, inter alia, the following:

"2. It is hereby understood and agreed that, except as otherwise provided herein:

"a. All right, title, and interest in or to any timber included in this contract shall remain in the United States until it has been paid for, cut and scaled; and all right, title and interest in or to any timber which has been paid for, cut and scaled but not removed from the sale area by the purchaser within the period of this contract or any extension thereof shall revest in the United States.

"b. In the event any timber included in this contract is destroyed or damaged to the extent it is unmerchantable by fire, wind, flood, insects, disease, or similar cause the party holding title to the destroyed or damaged timber shall bear the loss in stumpage and required deposits resulting from such destruction or damage, and there shall be no obligation on the part of the Forest Service to supply, or on the part of the purchaser to accept and pay for, other timber in lieu of that destroyed or damaged: *Provided,* that damage to or loss of timber removed from the sale area before scaling shall be borne by the purchaser, and: *Provided* further, that this paragraph shall not be construed to relieve either party of liability for negligence."

From the stipulation it further appears that pursuant to the contract the logs in question were cut, scaled and formally paid for in the calendar year of 1959, subsequent to the second Monday of January, subject to the deposits required by the Forest Service as security; that the cut timber was removed from Idaho County, Idaho, and transported to Montana prior to the scaling and prior to the formal payment being made by appellant; that the Forest Service required appellant to brand all logs so cut in order to identify the logs as to the area from which they were cut; that two-part load tickets were furnished by the Forest Service for each load of logs, the truck driver being required to have the lower half of such ticket in his possession until the

logs were delivered to the scaling point in Montana, when the load ticket was surrendered to the Forest Service representative; that the trucks hauling the logs were stopped at various times to check the logs, identification marks and load tickets; that upon delivery of the logs to the mill in Montana, the Forest Service scaler scaled the load, after collecting the load ticket, and the scaler would stamp each log and attach a streamer to each load, whereupon appellant could then intermingle the logs with others.

The procedure of furnishing of the load-tickets, marking, scaling and paying for the logs was all in conformity with the contract provisions.

It is also stipulated that one of appellant's witnesses would testify to the following facts:

"That at the time bids are taken on Forest Service sales of timber a deposit is required and in the event the bidder received the contract, the deposit is retained by the government. This deposit is a guarantee that formal payment will be made for the timber after it has been cut and scaled. During the course of logging, the United States Forest Service bills the purchaser for lump sum amounts as additional deposits, to cover and secure payment for all timber cut, such deposits being made prior to the cutting of any timber not so secured, it being understood that at all times there must be sufficient security on hand to secure payment to the United States Forest Service for all timber cut or which may be contemplated to be cut before another bill for a future deposit is made."

In the stipulation appellant also agreed that if the logs involved were found to be subject to assessment and taxation for the years 1958 and 1959, the method of assessment in the amount of the tax levied was correct.

■ Under the provisions of 16 U.S.C.A. § 500, Idaho County received 25% of all moneys received by the National Forest Service for the stumpage payments made in accordance with the contract. Appellant's contention that this was in lieu of taxes is without merit. Such payment is in the nature of an assistance grant, not in lieu of taxes; Trinity Independent School District v. Walker County, Tex.Civ.App., 287 S.W.2d 717.

The primary issue as presented by this appeal is whether Idaho County could assess and tax timber cut from National Forest Service lands by appellant when under the contract the title to the logs was reserved in the United States of America until the logs have been scaled and paid for, which in this instance occurred outside Idaho County and the State of Idaho.

Appellant contends that no legal title having passed to the appellant while the logs

were in the State of Idaho, the logs were still the property of the United States and not subject to taxation by the State of Idaho. Idaho Const. Art. 7, § 4; I.C. § 63–105 and § 63–101. Appellant also contends the decision of this court in Winton Lumber Co. v. Shoshone County, 50 Idaho 130, at page 139, 294 P. 529, at page 532 is controlling here. In that case it was stated:

"The agreement of the lumber company to purchase did not vest title in it, equitable or otherwise, to the standing timber. Title to logs under the terms of that agreement [similar in import to the present agreement] would not vest until paid for, scaled and measured. None of these conditions obtained as to this 2,000,000 feet of timber on the second Monday of January, 1930. At the close of 1929, there was a balance to the credit of the lumber company of about a thousand dollars on the 1929 operations. On April 3, 1930, the company made a substantial payment. It then advanced $8,000 on account of the 2,000,000 feet it contemplated cutting that year. This timber, like the timber cut the year before, was on the second Monday of January the property of the government, exempt on that date and throughout the year."

In 1949 I.C. § 63–105 was amended by S.L. 1949, c. 269, which chapter added, among other provisions, the following:

"20. Provided, that if any property, real or personal, which is exempted from taxation on the second Monday in January shall thereafter have a changed status, either by change in ownership or otherwise, during the year, in such a manner that if the changed status had existed on the second Monday in January such property would have been taxable at that time, then such property shall be assessed in the following manner: If the status changed before April first, then for its full cash value; if between April first and July first, for three-fourths of its full cash value; if between July first and October first, then for one-half of its full cash value; and if the status changed after October first, then for one-fourth of its full cash value."

I.C. § 63–105 was again amended, S.L.1957, c. 155, but the foregoing provision was not changed. As thus amended by S.L.1957, c. 155, I.C. § 63–105(20) is the statute under which this case is being considered (I.C. § 63–105 was later amended by S.L.1961, c. 42).

Respondent asserts, and we believe correctly, that the holding of this Court in Winton Lumber Co. v. Shoshone County, supra, must be considered in the light of the subsequent amendment of the exemption statute, and that case cannot be considered as controlling authority herein by reason of the later statutory enactment.

The trial court, in upholding the personal property tax on these logs, predicated its decision substantially upon the authority of Petition of Edward Hines Lumber Co., 196 Or. 420, 248 P.2d 720. In the Hines case the taxpayer had in its possession certain logs cut from national forest lands. Under the terms of the contract, title to the logs was vested in the federal government until they were scaled and paid for. At the time the logs were assessed by Lane county for tax purposes, they were located in the taxpayer's mill pond, and the government had sufficient money on deposit for the purchaser to pay for the logs in full, but none of the logs had been scaled by the government, as provided in the contract. It was conceded that legal title to the logs on January 1, 1948, the assessment date, was in the United States government.

The taxpayer, in resisting the assessment, contended that " 'Title to the logs and all property interest therein on January 1, 1948, were reserved in the United States Government and taxation by Lane County violates the federal Constitution which impliedly provides that property of the United States is immune from taxation by a county. * * * ' ". The Oregon Supreme Court reversed the holding of the lower court that the logs were not taxable, and held the logs taxable notwithstanding that the title to the logs remained in the United States. That court in arriving at this conclusion relied on the case of S. R. A., Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, at 756, 90 L.Ed. 851 at 860, where the Supreme Court of the United States had before it the question of whether or not the state of Minnesota could tax realty, legal title to which was in the United States, but which had been sold to a buyer under an executory contract of sale, the possession of the same being in the buyer and the instalment payments on the purchase price of the property having not been fully made. The Supreme Court of the United States resolved the question of taxation of the real property in favor of the State of Minnesota, stating:

" * * * We think the petitioner's Minnesota property is in a similar position. Ownership of the beneficial interest has passed to the petitioner with legal title retained by the United States for security purposes. This should not put this private property in an exempt class.

"There is a suggestion that to hold United States property subject to state taxation pending the completion of payment will injuriously affect its salability and therefore interfere with the Government's handling of its affairs. Our recent cases have disposed of this economic argument in a way which is contrary to petitioner's contention. * * *

"The only other contention of petitioner which we need mention is that the state has included the interest of the United States in the valuation of the land, and has therefore subjected that interest to taxation. But no deduction need be made for the interest of the Government since that interest is for security purposes only and is not beneficial in nature. The whole equitable ownership is in the petitioner and the value of that ownership may be ascertained on the basis of the full value of the land. \* \* \*"

In evaluating the reasoning leading to the conclusions reached by the Supreme Court of Oregon in Petition of Edward Hines Lumber Co., supra, and the Supreme Court of the United States in S. R. A., Inc. v. Minnesota, supra, it is essential to consider the Idaho statutes pertaining to assessment of personal property.

I.C. § 63–109 provides:

"Personal property defined.—Personal property for the purposes of taxation shall be construed to embrace and include, without especially defining and enumerating it, all goods, chattels, stocks and bonds, equities in state lands, easements, reservations, and all other matters and things of whatsoever kind, name, nature or description, which the law may define or the courts interpret, declare and hold to be personal property under the letter, spirit, intent and meaning of the law, for the purposes of taxation, and as being subject to the laws and under the jurisdiction of the courts of this state."

I.C. § 63–1203 provides in pertinent part:

"The assessor must assess all personal property required by this act to be entered on the personal property assessment role, between the second Monday of January and the first Monday of July in each year, \* \* \* In making such assessment, the assessor shall actually determine, as nearly as practicable, the full cash value of each piece of personal property assessed and shall enter the amount and value of each class of personal property in appropriate columns, after the name of the *owner* of such property, \* \* \*." (Emphasis added.)

The logs were personal property and thus subject to assessment and taxation under the statutes (I.C. § 63–1203 and § 63–105 as amended by S.L.1957, c. 155), if at the time of the assessment the logs were in the state of Idaho and the property of appellant; if the logs were the property of the United States, then, of course, they were not subject to assessment and taxation. Idaho Const. Art. 7, § 4; I.C. § 63–101 and § 63–105(1). Appellant points out that "title" to these logs remained in the Forest Service until there was full compliance with the terms of the contract, i. e., scaling of

the logs and formal payment for them. Appellant asserts that by reason of the scaling and formal payment for the logs only being completed after the logs were in Montana, that at no time was appellant the "owner" while the logs were in Idaho.

■ The supremacy of the Federal Government in our nation forbids the acknowledgment of the power of a state to tax property of the United States without its consent. Under an implied Constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters. McCulloch v. Maryland, 4 Wheat. (U.S.) 316, 4 L.Ed. 579; Van Brocklin v. Tennessee, 117 U.S. 151, 6 S. Ct. 670, 29 L.Ed. 845; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209.

The impact of state taxation on federal operations may be so close and threatening as to compel judicial intervention to declare the state tax invalid, as in the McCulloch case, or so remote and incidental as to justify a court in refusing to relieve a taxpayer from a state tax; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; S. R. A. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851; U. S. v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424; U. S. v. Muskegon, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436; Detroit v. Murray Corp., 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed. 441.

■■ The rule concerning the taxability of government property is that such property is immune from state taxation until a sale thereof is sufficiently complete to pass beneficial ownership to the purchaser. S. R. A., Inc. v. Minnesota, supra. In the instant action, appellant pursuant to the "Timber Sale Contract", was authorized to go upon the Forest Service lands for the purpose of severing the trees therefrom; it was authorized to take them into possession, transport them, and upon compliance with the specific terms of the contract as to scaling and payment, receive full and complete legal title, and the right to do with them as it saw fit. Appellant, at all times from the moment the logs were severed from the land, was operating under a valid contract with the government, pursuant to which, assuming the government would not default in its obligations, would lead to complete ownership and legal title in appellant. Under the deposit provisions of the agreement, the Government had sufficient control over appellant to guarantee payment for the logs. After the logs were severed, the risk of loss under the contract, was to fall upon appellant. Under these provisions of the agreement, the trial court was correct in determining that the beneficial and actual property in the logs was vested in appellant, at the time of the assessment, and that the

retention of title by the government was for scaling purposes and to insure compliance by appellant with the terms of the agreement.

An analogous situation is presented by the cases dealing with taxability of personal property being sold under a conditional sales contract. Although there is some diversity of opinion, generally it is held that under statutes involving taxation of personal property subject to a conditional sales contract, the vendee in possession, and not the vendor, is the party to be assessed. See: State v. White Furniture Co., 206 Ala. 575, 90 So. 896; Singer Sewing Mach. Co. v. Cooper (D.C.Ohio) 263 F. 994; State v. J. I. Case Co., 189 Minn. 180, 248 N.W. 726; Massey-Harris Co. v. Lèrum, 60 S.D. 12, 242 N.W. 597; Houser & Haines Mfg. Co. v. Hargrove, 129 Cal. 90, 61 P. 660; San Diego County v. Davis, 1 Cal.2d 145, 33 P.2d 827; Automatic Voting Mach. Corp. v. Maricopa County, 50 Ariz. 211, 70 P.2d 447, 116 A.L.R. 320. See also: Putnam v. Ford, 155 Va. 625, 155 S.E. 823, 71 A.L.R. 1217 and annotation following concerning taxability of corporate stock purchased on margin. Nor is the case of Wrought Iron Range Co. v. Rich, 32 Idaho 453, 184 P. 627, at variance with this rule. There the Wrought Iron Range Co., had shipped a carload of ranges to Blackfoot, Idaho; prior to the shipment agents of the company had taken orders from residents of the county for ranges and buyers had signed notes. Upon arrival of the car in Blackfoot the company's agent unloaded them and placed them in a warehouse where they were being set up for delivery. Before delivery the tax assessor levied an assessment on the ranges, and the company paid the tax under protest, contending the assessment was void, inasmuch as the ranges had been sold to the parties. This court in rejecting the company's contention stated, 32 Idaho at page 455, 184 P. at page 628:

"* * * The sales were not absolute; they were conditional. Appellant was not bound to make deliveries of the ranges, and the notes were to be void if deliveries were not made. Neither of the purchasers had been sold a specified piece of property, but the order of each of them could be filled by the delivery of any range in the carload lot. If appellant made deliveries, as specified in the notes, the sales would be complete, and the obligations to pay would be absolute. Until that was done the sales were incomplete, the obligations were conditional, and the ranges were the property of appellant."

In the instant case the assessment by respondent was on the logs, and not on the interest of the United States Government. The appellant had possession and an equitable and beneficial ownership in the logs sufficient for taxation by respondent herein.

**300**

It is thus our conclusions that the trial court correctly upheld the validity of the assessment and tax.

Judgment affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.