Argued September 8, demurrer sustained and peremptory
writ disallowed September 28, 1966

# SCHOOL DISTRICT NO. 24J, MARION
# COUNTY *v.* McCARTHY ET AL

### 418 P. 2d 817

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause and filed a brief for defendants.

*Robert W. DeArmond,* Salem, argued the cause for plaintiff. On the brief were DeArmond, Sherman & Barber, Salem.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

This is an original proceeding in mandamus. We took jurisdiction because of the public importance of the question (tax levy for school purposes) and because of the need for a prompt determination of the controversy.

The alternative writ, to which a demurrer has been interposed, alleges that unless this court orders the defendant county officials to change the 1966-67 tax levy the proposed Marion County levy will be illegal and will deprive the plaintiff school district of revenue to which it is entitled. The only issue is the proper construction of certain statutes, to which we now turn.

Until 1965, and for many years prior thereto, the relevant statute, now designated as ORS 328.005, provided in substance as follows:

> "To create a county school fund, each county court shall levy, at the same time other taxes are levied, a tax for school purposes upon all taxable property of the county. *The tax shall produce* at least $10 per capita for all children within the county between the ages of 4 and 20 years, as shown by preceding school census * * *." (Italics supplied.)

In 1951, the tax-levying officials of Lane County had attempted to offset against the levy required by the foregoing statute an amount of money to be received by Lane County from United States forest-reserve rentals pursuant to §§ 107-711 through 107-714, OCLA, inclusive (now ORS 293.560① and 294.060②). We held that in the absence of amending legislation the federal revenues in question could not be offset against the school levy, but were to be disbursed to the schools over and above the proceeds of the levy. *School*

---

① ORS 293.560 "(1) All sums received by the state from the United States Government as its distributive share of the amounts collected by the United States Government for forest reserve rentals, sales of timber, and other sources from forest reserves within the State of Oregon, shall, upon receipt, be distributed among the several counties in which such forest reserves are located.

"(2) The Secretary of State shall ascertain from the proper United States officers having the records of receipts from forest reserves, the amount of receipts from each forest reserve in this state for each year for which money is received by the state. A separate account shall be kept of the sum received from each forest reserve, which sum shall be paid only to the county or counties in which the forest reserve is located. Each county shall receive such proportional amount of the sum as the area of the forest reserve included within the boundaries of the county bears to the total area of the forest reserve within the state. The Secretary of State shall in all cases when possible make all computations upon the net areas of such forest reserves according to the data furnished by the federal officials."

② ORS 294.060. "(1) The moneys received by each county under ORS 293.560 shall be divided 75 percent to the road fund and 25 percent to the school fund of the county and shall, subject to subsections (2) and (3) of this section, be expended as other moneys in those funds are expended.

"(2) The moneys so apportioned to the county road fund may be applied in payment of any outstanding road bonds or may be placed in any county road bond sinking fund for the purpose of being so applied.

"(3) The moneys so apportioned to the school fund in any county operating under and by virtue of ORS chapter 333 shall be used for and applied to the payment of the bonded and warrant indebtedness of the school districts incurred prior to January 1, 1925, until such bonded and warrant indebtedness has been paid in full."

*District No. 4 v. Bayly et al.,* 192 Or 548, 235 P2d 911 (1951).

In that opinion, a dictum pointed out that the statute as then written expressed the intent that the *tax so levied should "aggregate"* the amount ($10 per child) and could not be read to mean that the *tax plus moneys derived from other sources* should "aggregate" the designated amount. We observed that to construe the statute as the Lane County commissioners wanted it construed would require us to read into the statute the phrase "with other receipts" or similar language. 192 Or at 552.

After the decision in *School District No. 4 v. Bayly et al.,* supra, the statute remained in substantially the same form until 1965 when the Association of Oregon Counties sponsored the amending legislation which has given rise to the case before us. Oregon Laws 1965, ch 491, § 1. The new ORS 328.005 reads as follows:

"To create a county school fund, the governing body of each county shall provide annually, by levy upon all taxable property of the county, *or otherwise,* an amount at least equal to the lesser of:

"(1) The minimum amount it was required to levy for the purposes of the county school fund in the tax year 1965-66; or

"(2) Ten dollars per capita for all children within the county between the ages of 4 and 20 years, as shown by the preceding school census." (Italics supplied.)

During the early months of 1966 the appropriate officials of the various counties began work on their budgets and tax levies. Apparently one or more counties which contemplated the receipt of federal forest rentals again saw these receipts as a possible offset

against taxes, and requested advice from the Attorney General. That office rendered conflicting opinions upon the effect of the new statute.

Marion County officials proceeded with their plans for the 1966-67 levy, relying upon the "or otherwise" clause of ORS 328.005 to permit the use of the timber money as an offset against the levy.

A comparison of ORS 328.005 before and after its amendment, and in light of the opinion in *School District No. 4 v. Bayly et al.,* leads to the conclusion that the Legislative Assembly intended by the amendment to make possible some set-off against the county levy. Whether or not the amendment was a desirable one as a matter of public policy is, of course, a question which only the Assembly or the voters can decide. It is not a judicial question.

In view of our conclusion that the Assembly intended to permit the counties to set off revenues from other sources against the mandatory levy, the only remaining question is whether revenues distributed under ORS 293.560 and 294.060 are such as to be properly included within the "or otherwise" clause.

The plaintiff school district contends that ORS 293.560 and 294.060 indicate a legislative direction to use the forest-reserve funds for school purposes over and above any other revenues the counties may receive for such purposes. This was certainly true prior to the 1965 amendment of ORS 328.005. However, the amendment must be read in light of the *Bayly* case, and when so read ORS 328.005 does not conflict with ORS 293.560 or 294.060, but is entirely in harmony with those sections.

If the school districts are injured by the interpretation placed upon ORS 328.005 by the county officials, their remedy lies in the Legislative Assembly. There

is no basis for a peremptory writ of mandamus in this case. The demurrer must be sustained.

It will be the judgment of this court that the alternative writ be dismissed.

PERRY, J., dissenting.

I am unable to agree with the decision of the majority.

The decision they reach, although not so stating, must be based on the premise that the legislature in amending the statute as it previously existed granted to the county the use of the federal forest rentals to reduce the levy for school purposes. They reach this conclusion on the basis of language which they characterize as dictum, used by this court in *School District No. 4 v. Bayly et al.,* 192 Or 548, 552, 235 P2d 911, as follows:

"* * * We cannot accept defendants' contention without reading into the statute, after the word 'aggregates', the phrase 'with other receipts', or similar language, and obviously we have no authority to do this."

As I understand *Bayly,* the court was simply stating it could not accept any portion of the defendant county court's argument as to the use of federal forest rentals to reduce the tax levy because it could not depart from the clear language of the statute, that the fund must be raised by a tax levy. Thus the underlying question as to the authority of the county to apply federal forest funds in lieu of levying taxes was not reached in *Bayly.*

In *School Dist. No. 24 v. Smith,* 97 Or 1, 191 P 506, this court held that when the legislature designates that a levy should be made by the county for

school purposes such levy was mandatory and not discretionary.

ORS 328.005, as revised, mandatorily requires that the county shall "create" "annually" a county school fund by taxation or "otherwise" in an amount equal to that of the preceding tax year, or ten dollars per capita for all children between the ages of 4 and 20, as shown by the preceding school census, whichever is the lesser. There should be no question then but that the duty to create this fund rests upon the county court.

The real question then presented is whether or not the use of the words "or otherwise" can be interpreted as authorizing the county to use the Federal Forest Funds in reaching this required amount established by the legislature.

The source of Federal Forest Funds is money paid by the federal government to the state.

> "Twenty-five per centum of all moneys received during any fiscal year from each national forest shall be paid, at the end of such year, by the Secretary of the Treasury to the State in which such national forest is situated, to be expended as the State legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which such national forest is situated: * * *." 16 USCA, Conservation § 500, p. 553.

The statute provides the states with a public grant, not a payment in lieu of taxes. *Trinity Independent School Dist. v. Walker County,* Tex Civ App, 287 SW2d 717; *Tree Farmers, Inc. v. Goeckner,* 86 Idaho 290, 385 P2d 649.

In *Trinity Independent School Dist. v. Walker County,* supra, it is clearly pointed out that these

payments under the statute by the federal government to the states are not in lieu of taxes which might have been levied upon the lands were it not for the fact that the property is federally held, but is in fact a federal grant to the public for the benefit of public roads and schools, and the funds paid to the states are in the nature of trust funds, imposing a "sacred obligation" upon the state, *King County, Wash. v. Seattle School Dist. No. 1,* 263 US 361, 44 S Ct 127, 68 L ed 339, to carry out the purposes of the grant, and that the purpose of the grant to the schools is to encourage education as beneficial to the welfare of the nation.

Since the grant is one of incentive to the schools, the grant is general for the benefit of all the people of the county. Then, if the word "otherwise" is interpreted as authorizing the use of the federal grant to offset the necessary taxes to comply with the legislative mandate to create a school fund of an amount certain, the grant from the federal government to aid the schools is perverted to a grant in aid of real property taxpayers, contrary to the intent of congress.

Also, in my opinion, the legislature in using the words "or otherwise" in amending ORS 328.005 was doing no more than permitting the counties, should they have unexpended general funds, or should they sell county held property, or accept moneys for redemption of property which they had foreclosed, or received bequests or gifts, to use these funds to reduce the tax levy, but it was not relieving the counties of their duty to raise the amount mandated.

I cannot attribute to the legislature an ulterior purpose, as does the majority. I cannot believe it intended the state should forsake its trust to carry out its "sacred obligation" to the federal government

as to these funds, simply to benefit the owners of real property in the counties affected.

For the above reasons, I dissent.

DENECKE, J., dissenting.

The legislature required the counties to establish a county school fund and to levy taxes sufficient to pay into such fund an amount equal to $10 per child living in the county. ORS 328.005; Oregon Laws 1899, p 223, § 22. Shortly thereafter the legislature also authorized the payment of federal forest reserve funds to the county and obligated the county to place 25 per cent of those funds in the county school fund. ORS 294.060; Oregon Laws 1907, ch 160, § 1, p 310.

I view the question to be as follows:

Is it reasonable to conclude that the legislature, without specifically so stating, intended that the obligation it placed upon the county to pay annually into the county school fund an amount equal to $10 per each child in the county could be satisfied in whole or in part by the county paying into the county school fund moneys paid to it by the state which the legislature had previously obligated the counties to pay into the county school fund; or is it more reasonable to conclude that the legislature did not intend that such already-earmarked funds could be so used?

I am of the opinion that the most reasonable conclusion is that the legislature did not intend that such already-obligated moneys could be used to offset a county obligation to the same fund for which the other moneys had already been obligated.

O'CONNELL, J., joins in this dissent.