[Civ. No. 28357. Second Dist., Div. Three. Apr. 19, 1966.]

THE RAND CORPORATION, Plaintiff and Appellant, v. THE COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson, Thomas A. H. Hartwell and Michael Traynor for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Defendants and Respondents.

SHINN, P. J.—Rand Corporation is a nonprofit California corporation engaged in research and education for the United States of America relating to military preparation and effectiveness. The corporation owns a building on privately owned land in Santa Monica in Los Angeles County. In 1956 and 1957 the building contained a Johnniac computer which Rand had constructed for the government, a telephone network, an Ozalid Printmaster, motor generators and other equipment, all the property of the government. In 1956 and 1957 the County

of Los Angeles made assessment of the possessory interest of Rand in and to the property of the government. A small amount of it was personal property, the remainder was permanently affixed to the land and was realty. Taxes were levied and were paid by Rand, a part being the share of the City of Santa Monica, a part the share of the City of Los Angeles and the remainder being due to the county. Claiming the taxes were invalid Rand made demand upon the county for refund, which was denied. The present action is against the county and the two cities for refund.

The judgment awarded plaintiff the amount of the taxes paid upon the possessory interest in the personal property of the government, but denied recovery for the taxes upon the possessory interest of Rand in the remainder. Rand appeals.

The contract of Rand with the government was on a yearly basis and it is contended that the corporation did not have the exclusive possession of the property against the government and all others necessary to give it a taxable possessory interest. A second contention is that the taxes were invalid because a tax on a possessory interest in an improvement located on taxable land is not authorized, and a third contention is that the taxes were invalid because they were based upon a classification of the property as real property in conflict with federal law that government property shall not lose its identity as personalty by reason of affixation to any realty.

The initial reply of the county to all the arguments of Rand is that all the grounds of the attack upon the levy of taxes were considered and decided adversely to the contentions of Rand in *Kaiser Co.* v. *Reid,* 30 Cal.2d 610 [184 P.2d 879], in which the court upheld taxes upon the possessory interests of Kaiser in shipyards of the United States Government, one located upon land of the government and the other upon privately owned, leased land. In this action the United States was a plaintiff in intervention.

It is not questioned by respondents that in order to be taxable as a possessory interest the possession must be exclusive. Rand seeks to distinguish the holding in *Kaiser* upon the ground that Kaiser, under its contracts with the government, had exclusive possession of the government property which it was using, and that Rand did not have exclusive possession as against the government of the facilities it was using.

The services of each corporation were exclusively for the government, and while the respective contracts differed in their statements of the rights and duties of the contractors, we

.are not persuaded that these differences were fundamental, or .that the possessory rights of Rand were materially less exclusive than those that belonged to Kaiser.

We consider first the rights of the two contractors with respect to the possession of the government property as expressed in their contracts. Kaiser was building ships for the government, and appellants say the government could terminate the contract ''Only if Kaiser did not diligently perform or was insolvent; in addition, wartime conditions imposed practical limits on termination, 30 Cal.2d at 618-619,'' and that the Rand contract could be terminated ''Whenever the Contracting Officer shall determine that such termination is in the best interests of the Government.'' We believe the right to terminate was essentially the same under each contract. As stated in *Kaiser*, page 619, ''Likewise appropriate to the government's purpose was the optional concellation clause, permitting the commission [Maritime Commission] 'at any time prior to the completion of the work to be performed' to 'cancel' the contracts 'upon written notice to' plaintiff, . . . .'' And the court also said ''Such provisions for cancellation and termination, however, did not establish plaintiff's right to use the shipyards as no more than a permit or license which could not be responsible for a 'property' tax.'' ■ The same, of course, is true of the government's right to cancel Rand's contract. The right to cancel ''in the best interests of the Government'' did not destroy the exclusiveness of Rand's possession.

The contract provided that the property in use by Rand could be removed if ''the Contracting Officer determines that the interests of the Government require removal of such property.'' If the right to terminate the contract in the interests of the government did not reduce Rand's possession to that of a mere licensee, neither did the right of the government to remove all or part of its property. It is not questioned that Rand constructed the Johnniac computer for the government in 1952 and has had exclusive use of it ever since that time. Since it had possession of the government's property when it was assessed in 1956 and 1957, the fact that the property could have been removed previously is immaterial.

Certain other provisions of the contract are said by Rand to be inconsistent with its right to exclusive possession; these are ''The Government shall at all reasonable times have access to the premises where any of the Government property is located,'' and that subject to the right of removal, ''The

Government property shall remain in the possession of the Contractor for such period of time as is required for the performance of the contract.'' Rand's permission to use the government property was not transferable without the consent of the government, it could be used only in the work for the government, was required to be earmarked as government property and maintained as required by the contracting officer, an'd Rand was required to pay no rent for the use of the government property. We cannot see how these provisions could have detracted from the exclusiveness of Rand's possession.

Continuing its argument that the opinion in *Kaiser* is not controlling with respect to the exclusiveness of its possession of the government property, Rand relies heavily upon *Thiokol Chemical Corp.* v. *Morris County Board of Taxation,* 41 N.J. 405 [197 A.2d 176], in which a tax upon Thiokil's possessory interest in government property was annulled. Under the laws of New Jersey the possessory right of Thiokol was not subject to taxation unless the property was occupied under a lease. There was no lease. There was, however, a contract with the government which defined the rights of the contractor with respect to possession and use of the government property. The court construed the taxing statute as intended to relate to a conventional leasehold, one for a definite term and requiring the payment of rental. The government maintained a staff of about 10 inspectors on the premises and they exercised a high degree of control, which was considered as having an important bearing on the extent of Thiokol's possessory rights. After the receipt of evidence and statements on behalf of Thiokol and the government, the court concluded that it was not the intention of the parties to enter into a lease and that since nothing short of a leasehold interest was taxable the tax levied against Thiokol was void.

A critical comparison of the possessory rights of Thiokol with those of Kaiser is not required. Whether they differed in substantial respects, or were essentially the same, the conclusion reached in *Kaiser* upon that point is controlling here, since in all important particulars the possessory rights of Rand were equal to those of Kaiser.

Rand has also furnished copies of the findings and judgment in *California Institute of Technology* (United States of America, Plaintiff-Intervener) v. *County of Los Angeles,* (No. 614847), in which the plaintiff was given judgment for refund of taxes upon its possessory interest in government property.

The question was whether Cal Tech had exclusive possession as against the government. Cal Tech occupied buildings and equipment of the government located upon a government reservation. The court found "In the performance under the agreement between the United States and Cal Tech, the United States exercised extensive supervision and control over the maintenance of equipment used and the overall services and work performed by Cal Tech . . . and directed the nature of the work done and exercised supervision and control whenever and wherever it deemed it to be appropriate." The case was decided March 4, 1959; *Kaiser* was decided in September 1947. Since opposite results were reached in the two cases it must be assumed that the evidence proved that the possessory rights of Cal Tech were not substantially equal to those of Kaiser.

 It is suggested rather than argued that Rand's status as a nonprofit corporation would excuse it from taxability upon its possessory rights. No authority is cited to that effect and we see no merit in the suggestion. The people who compose Rand have a purpose in making use of government property and the opportunity to accomplish that purpose could well be worth more to them than mere financial gain.

Next to be considered is the contention "No statute authorizes a separate tax on a possessory interest in an improvement located on taxable land; and no authority for such tax can be found." As explained in appellant's brief, the statement means that there never has been specific authority for such a tax. But with respect to the power to tax the basic question is whether a possessory interest in improvements on taxable land, as distinguished from the improvements themselves, or the land, is recognized as a distinct property right. If it is recognized as an "improvement to realty" there is a mandatory duty to impose a tax.

Article XIII, section 1 of the California Constitution requires that "All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. . . ." Possession or right to possession of land, fixtures, and improvements are real property. (Rev. & Tax. Code, §§ 104 and 105.) Section 201 requires that all property not exempt under the laws of the United States or of this state is subject to taxation. Section 607 provides that land and improvements shall be separately assessed. Sections 2188 and 2188.1 make taxes on improvements a lien on the land on

which they are located if assessed to the person to whom the land is assessed and provide for a lien upon land of the assessee for taxes assessed to him if he is not the assessee of the land on which the improvements are located, and section 2188.2 provides for the separate assessment of improvements owned by a person other than the owner of the land.

Section 107 defines "possessory interests" as " (a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person. (b) Taxable improvements on tax-exempt land." Respondents contend that under the definition of section 107 a possessory interest in improvements on taxable land is just as separate and distinct a class of property as the same interest in improvements upon exempt land, and is therefore subject to taxation.

Rand replies that when section 107 was enacted in the 1939 codification of the tax laws as the Revenue and Taxation Code "No specific authority existed for taxing a possessory interest in an improvement located on *taxable* land," and that section 107 is "only a new statement of old principles, not a change in the law." It is said that section 3820 of the Political Code provided that the assessor could collect taxes on a possessory interest in land and taxable improvements on tax exempt land, but made no reference to possessory interests in improvements on taxable land. It is also said that section 3817 of the Political Code provided for tax liens and made no reference to possessory interests in improvements on taxable land, although it specifically provided for tax liens concerning other possessory interests. The substance of Political Code sections 3817 and 3820 is retained in Revenue and Taxation Code sections 2188, 2188.1 and 2188.2. Revenue and Taxation Code section 2190 provides that taxes on possessory interests are a lien on the other taxable real property of the owner in the same county.

If, as Rand contends, there was formerly no procedure for the collection of taxes upon possessory interests in improvements on privately owned land and hence no authority to assess a tax to the owner of the possessory interests, it was because the word "improvements" was missing. This deficiency of procedure was in need of correction. ▪ Subdivision (a) of section 107 of the Revenue and Taxation Code, which added "improvements" and classified a possessory interest therein as property, and sections 2188, 2188.1, 2188.2 and 2190 of the code supply what had previously been missing or obscure.

While in *Kaiser* the court upheld a tax upon the possessory interest of Kaiser in the government property located on privately owned land, Kaiser or the government did not contend that the tax as related to shipyard No. 3-A was invalid because it was located upon privately owned land, and there was no occasion for the court to consider that theory of invalidity now urged by Rand. We quote from page 618 of the opinion:

" 'Possessory interests' in 'land or improvements' are taxable under section 107 of the Revenue and Taxation Code and in pursuance of the constitutional mandate that 'all property . . . shall be taxed.' (Const., art. XIII, § 1.) Illustration of this class of taxable estate is found in cases involving possessory interests in property which is tax exempt by virtue of ownership in the federal government (*State of California* v. *Moore,* 12 Cal. 56; *People* v. *Shearer,* 30 Cal. 645; *L. E. White Lumber Co.* v. *County of Mendocino,* 177 Cal. 710 [171 P. 799]), by virtue of ownership in the state government (*San Pedro, Los Angeles & Salt Lake Railroad Co.* v. *City of Los Angeles,* 180 Cal. 18 [179 P. 393]; *Outer Harbor Dock & Wharf Co.* v. *City of Los Angeles,* 49 Cal.App. 120 [193 P. 137]) or by virtue of ownership in a city government (*Hammond Lumber Co.* v. *County of Los Angeles,* 104 Cal.App. 235 [285 P. 896]). Thus, in declaring possession of an agricultural claim upon public lands to be taxable, this court early said in the *Shearer* case at pages 655-657: 'The possession itself of the public lands and the improvements thereon, whether by naked trespassers, or those who claim in addition a right of preemption, as to everybody except the United States, have always in California, and in most, if not all of the new States, been regarded as valuable property interests. . . . These possessions, then, are recognized as a *species of property* subsisting in the hands of the citizens. It is not the land itself, nor the title to the land, nor is it the identical estate held by the United States. It is not the preemption right, but is the possession and valuable use of the land subsisting in the citizen. *Why should it not contribute its proper share, according to the value of the interest, whatever it may be, of the taxes necessary to sustain the Government which recognizes and protects it?'* (Italics added.)"

All that need be said of the omission of particular discussion of the fact that shipyard No. 3-A was on taxable land, as affecting Kaiser's tax liability, is that it did not occur to the attorneys or the court that Kaiser's possessory interests in

that shipyard differed factually or legally from its interest in shipyard No. 3.

Specific authority for the tax here in question derives from the classification of Rand's possessory interest in the improvements as property, the mandatory duty to impose taxes upon all nonexempt property and the procedure for collection of the taxes.

Rand's final point is "The tax is invalid because it is based on a local classification of the property as real property in conflict with the federal law that the property shall not 'lose its identity as personalty by reason of affixation to any realty.' " Rand's contract contained such a provision, in conformity with a regulation of the United States Department of Defense. The regulation is not, as appellant contends, a law which precludes the states from classifying government property as improvements to real property for taxation purposes, nor have we been cited to any such law.

In *Kaiser,* shipyard No. 3-A was upon land leased from Santa Fe Land Improvement Company. The lease provided that the facilities in shipyard No. 3-A should " 'remain the exclusive property of the Government, with full right to construct, extend, alter or remove . . . at will.' " The court said (p. 630) : "But the terms of the lease relative to the government's right to remove the facilities in Shipyard No. 3-A did not fix their status as personalty for tax purposes and preclude the assessor, though having knowledge of such private arrangement of the parties, from classifying such property as 'improvements to realty' in accordance with the physical facts of their annexation to the land." The court quoted from *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385 [175 P.2d 512], which held that banking fixtures installed under a lease which provided that the lessee had a right to remove fixtures were property classified as "improvements to realty" for tax purposes and that ". . . the agreement of the parties, whether express or implied, is not binding upon the taxing authorities." (P. 397.) The holding was premised upon the fact that uniformity of taxation requires that there must be uniform classification of real and personal property. While in *Kaiser* the court spoke only of the provision of the lease of the private land which gave the government the right to remove the facilities, the purpose of the provision in the lease and in Kaiser's contract was the same, namely, to assure that the title of the government in its personal property be not impaired by its being affixed to land. Of course, its title has

not been impaired. The holding with respect to the provision of the lease of the land on which shipyard No. 3-A was located is applicable to the same provision of Rand's contract. Neither provision deprived the taxing authorities of power to classify personal property affixed to the land as improvements to the realty.

The taxation of possessory interests in personal property of the government which has been attached to the land so as to become realty for taxation purposes under state law is not in conflict with any federal law. Here there has been no tax levied upon property of the government, and consequently no possible interference with the government's ownership. The judgment refunded to Rand the taxes it had paid upon its possessory interest in the personal property which was not attached to the realty. Our conclusion is that Rand was not entitled to a refund of the other taxes paid.

The judgment is affirmed.

Ford, J., and Kaus, J., concurred.