515 F.2d 285
 INTERNATIONAL PAPER COMPANY, Plaintiff-Appellant,
v.
COUNTY OF SISKIYOU, Defendant-Appellee.
DIAMOND INTERNATIONAL CORPORATION, Plaintiff-Appellant,
v.
COUNTY OF TEHAMA, Defendant-Appellee.
GEORGIA-PACIFIC CORPORATION, Plaintiff-Appellant,
v.
The COUNTY OF MENDOCINO, Defendant-Appellee.
 Nos. 73-2199, 73-2353.
 United States Court of Appeals,
Ninth Circuit.
 March 14, 1974.
 
 1
 George A. Sears (argued), of Pillsbury, Madison & Sutro, San Francisco, Cal., for plaintiff-appellant in No. 73-2199.
 
 
 2
 Leland H. Jordan (argued), of Bagshaw, Martinelli, Corrigan & Jordan, San Rafael, Cal., for defendants-appellees in Nos. 73-2199, 73-2353.
 
 
 3
 Paul A. Renne (argued), and Lee F. Benton, of Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for plaintiff-appellant in No. 73-2353.
 
 
 4
 Before DUNIWAY and CARTER, Circuit Judges, and SOLOMON,* District Judge.
 
 SOLOMON, District Judge:
 
 5
 Georgia-Pacific Corporation (Georgia-Pacific), International Paper Company (International Paper), and Diamond International Corporation (Diamond) appeal from judgments of the district court denying them refunds of California real property taxes assessed on their interests in standing timber in national forests.[1]
 
 
 6
 The Forest Service of the United States Department of Agriculture contracted to sell and permit Georgia-Pacific to cut and remove designated standing timber in national forests in Mendocino County, California. International Paper and Diamond have similar contracts with the Forest Service covering timber in national forests in Siskiyou and Tehama Counties. Mendocino County assessed a real property tax on Georgia-Pacific's possessory interest in the standing timber included under the Forest Service contracts. Siskiyou and Tehama Counties assessed similar taxes against International Paper and Diamond.
 
 
 7
 Each company paid the taxes under protest and filed an action for a refund, claiming both federal question and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. The actions were consolidated at trial and on appeal.
 
 
 8
 The companies assert that they have no taxable legal or beneficial interest in the standing timber. They allege that the taxing of national forest standing timber by a state is unconstitutional taxation of property of the United States under McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).
 
 
 9
 The Forest Service timber sales contracts provide that "all right, title, and interest in and to any Included Timber in this contract shall remain in the Forest Service until it has been cut, scaled, and paid for, at which time title shall vest in Purchaser." The statute which authorizes sales of timber from national forests, 16 U.S.C. § 476, provides that "(s)uch timber, before being sold, shall be marked and designated, and shall be cut and removed under the supervision of some person appointed for that purpose by the Secretary of Agriculture . . .." The companies argue that these provisions indicate that the government retained all legal and beneficial title to the lumber until after it has been cut, scaled, and paid for.
 
 
 10
 Property is not exempt from state taxation merely because the United States retains legal title as security. S.R.A., Inc. v. Minnesota,327 U.S. 558, 570, 66 S.Ct. 749, 90 L.Ed. 851 (1946). Nor does the property become immune because the financial burden of the tax will be passed on to the federal government. City of Detroit v. Murray Corp. of America, 355 U.S. 489, 494, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958). A state may tax a person's beneficial use of federal property, even though the tax is measured by the value of the government's property. United States v. Boyd, 378 U.S. 39, 44, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964); United States v. City of Detroit, 355 U.S. 466, 470, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958).
 
 
 11
 In Wilson v. Cook, 327 U.S. 474, 66 S.Ct. 663, 90 L.Ed. 793 (1946), the Court upheld the validity of a state tax on the severance of timber in national forests. There, as here, the contract provided that "title to all timber included in this agreement shall remain in the United States until it has been paid for, and scaled, measured, or counted." Supra at 478, 66 S.Ct. at 665. The government's retention of title did not immunize the timber from state taxes.
 
 
 12
 The asserted distinction between a tax on severance and a tax on possession is without merit. As the Supreme Court has held many times, "in passing on the constitutionality of a state tax 'we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.' Lawrence v. State Tax Commission, 286 U.S. 276, 280 (52 S.Ct. 556, 557, 76 L.Ed. 1102)." City of Detroit v. Murray Corp. of America, supra, 355 U.S. at 492, 78 S.Ct. at 460.
 
 
 13
 The sales contracts gave the companies the exclusive rights to cut "included timber" in specified areas. Although the parties did not know the exact volume of included timber at the time the contracts were signed, the contracts did contain estimates of the volume and types of timber included in the sale. The Forest Service agreed to adjust the number of trees marked for cutting if the volume cut was less than 90 per cent or more than 120 per cent of the estimated volume.
 
 
 14
 Under these contracts the beneficial interest in the included timber passed to the companies, just as the beneficial interest in land passes to the buyer when a contract of sale is executed.[2] See S.R.A., Inc. v. Minnesota, supra, 327 U.S. at 565, 66 S.Ct. 749. Although the companies did not have actual possession of the logs, they did have enforceable rights to cut and remove the timber described in the contracts. These contract rights are distinct from any interest which the United States retained to secure payment and control logging practices. These contract rights may be taxed by the state.
 
 
 15
 The contracts also authorized the companies to enter upon certain national forest land and to build roads and bring in machinery needed to harvest the included timber. Although these activities are regulated by the Forest Service, this regulation does not immunize the companies from state taxation unless their activities are so controlled that they become agents of the United States. United States v. Township of Muskegon, 355 U.S. 484, 486, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958). Here there is no such relationship. The companies used national forest land for their own profit-making activities and not for any governmental purpose. The contracts gave the companies a beneficial interest in the use of national forest land, which is distinct from the fee interest of the United States. This beneficial interest may be taxed by the state.
 
 
 16
 The companies place their principal reliance on United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). In that case the county assessor did not segregate the interest of the private taxpayer from the fee interest of the United States. Here, however, the counties taxed only the companies' possessory interests; they did not assess the underlying fee of the federal government.[3] See City of Detroit v. Murray Corp. of America, supra, 355 U.S. at 494, 78 S.Ct. 458.
 
 
 17
 The counties do not tax possessory interests under contracts to cut timber in state forests, although they do tax such interests in national forests. The companies therefore assert that the tax discriminates against persons buying timber from the federal government. They contend that this difference in taxation amounts to an unconstitutional discrimination against persons buying timber from the United States, citing Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960).
 
 
 18
 In Phillips, the school district argued that favorable tax treatment given lessees of the state was justified by the gain in the state's rental revenue, which offset the loss in taxes. The Court held that the increase in rental revenue did not justify discrimination against lessees of federal property, saying that:
 
 
 19
 "What the State's political subdivisions lose in taxes from the State's lessees cannot be made up in this fashion. Other local taxpayers including the Government's lessees must make up the difference." (Emphasis in original) supra at 384, 80 S.Ct. at 479.
 
 
 20
 Here the state gives the counties payments in lieu of the taxes which the counties would otherwise have assessed against state forests within their boundaries. California Public Resources Code, Section 4654. The counties have not shifted the burden of taxation from state forest land to national forest land. The counties derive revenue from both the state forests, under Section 4654, and from persons having possessory interests in standing timber in national forests. Since state property and persons having an interest in federal property are treated similarly, there is no unconstitutional discrimination.
 
 
 21
 It is immaterial that appellants' interests in national forest timber are taxed directly, while companies with similar interests in state forest timber may bear the burden of the state's in lieu of tax payments indirectly through higher timber prices. See United States v. City of Detroit, supra, 355 U.S. at 473, 474, 78 S.Ct. 474; Phillips Co. v. Dumas Independent School District, supra, 361 U.S. at 380, 381, 80 S.Ct. 474. Appellants have not shown that interests in state forest standing timber bear less of the counties' tax burden than appellants' interests in national forest timber.
 
 
 22
 The companies contend that Congress intended that private interests in national forest standing timber should be immune from state taxation, even if the state has the power to impose such taxes in the absence of conflicting federal legislation. They rely on Section 500 of Title 16 of the United States Code, which provides that 25 per cent of all moneys received from each national forest shall be paid to the state in which the national forest is located. The state may use the funds for the schools and public roads of the county or counties in which the national forests are located. The companies assert that these payments are in lieu of state taxes.
 
 
 23
 Section 500 must be construed with other statutes dealing with national forests. Section 480 of Title 16 provides:
 
 
 24
 "(T)he State wherein any such national forest is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State."
 
 
 25
 The Court in Wilson v. Cook held that this statute reserved to the states territorial jurisdiction to tax activities within national forests, supra, 327 U.S. at 487, 66 S.Ct. 663. Although the companies assert that the states retain jurisdiction only over the person, not over property, there is no reason to read the statute so narrowly: the "duties (of) citizens of the State" include payment of taxes on both property and activities. See also United States v. Nebo Oil Co., 90 F.Supp. 73 (W.D.La.1950). Payments under Section 500 were not intended to be in lieu of state taxation of private possessory interests in national forests.[4]
 
 
 26
 We hold that the states can tax private possessory interests in national forest standing timber.
 
 
 27
 Georgia-Pacific raises an additional issue. It asserts that, under California law, counties have no statutory authority to tax possessory interests in standing timber.[5]
 
 
 28
 Section 104 of the California Revenue and Taxation Code defines real property under three separate categories: (1) land, (2) minerals and standing timber, and (3) improvements. Section 107 of the same Code defines possessory interests under two categories: (1) possession of land or improvements and (2) taxable improvements on tax-exempt land.
 
 
 29
 Georgia-Pacific contends that the legislature's failure to include minerals and standing timber as a separate category of possessory interest under Section 107 was deliberate and shows a legislative intent to include minerals and standing timber under real property in Section 104 but to exclude them from possessory interests under Section 107.
 
 
 30
 We do not agree. In our view the list of possessory interests in Section 107(a) and (b) is not all-inclusive. In a later portion of Section 107 certain mineral interests are excluded from the definition of possessory interest, even though they are not listed as possessory interests, under Section 107(a) or (b). The failure to mention standing timber in the first part of Section 107 does not indicate a legislative intent to exempt it from possessory interest taxation.
 
 
 31
 Georgia-Pacific also asserts that its interests under the forest service contracts are not possessory under California law because its rights to the areas covered by the contracts are not exclusive. It is true that the land is open to hunters and other members of the public for recreational purposes. Public access does not, however, interfere with the company's right to conduct logging operations, and does not render the company's interest immune from possessory interest taxation. See El Tejon Cattle Co. v. County of San Diego, 64 Cal.2d 428, 50 Cal.Rptr. 546, 413 P.2d 146 (1966); Board of Supervisors v. Archer, 18 Cal.App.3d 717, 96 Cal.Rptr. 379 (1971); and County of Los Angeles v. Continental Corp., 113 Cal.App.2d 207, 248 P.2d 157 (1952). Compare Kaiser Co. v. Reid, 30 Cal.2d 610, 619, 184 P.2d 879 (1947).
 
 
 32
 Georgia-Pacific's interest would be taxable under Article XIII, § 1 of the California Constitution, even if it were not classified as possessory. That article requires that "(a)ll property in the State . . ., not exempt under the laws of the United States, shall be taxed . . .." See also California Revenue and Taxation Code, § 201. Since rights to standing timber are defined as real property under Section 104, the company's interest would be taxable unless it could claim an exemption under federal law. No such exemption exists.
 
 
 33
 The company contends that the county's valuation of its interest in standing timber by reference to the market value of the timber was incorrect and that the county should have assessed only the company's opportunity for profit under the contract. The county's method of valuation was correct under California law. See DeLuz Homes, Inc. v. County of San Diego, 45 Cal.2d 546, 290 P.2d 544 (1955); Texas Co. v. County of Los Angeles, 52 Cal.2d 55, 338 P.2d 440 (1959).
 
 
 34
 Appellants' other contentions have no merit.
 
 
 35
 The judgments of the district court are affirmed.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The excellent opinions of the Honorable Albert C. Wollenberg, the trial judge, are reported at 340 F.Supp. 1061 and 357 F.Supp. 380
 
 
 [2]
 The determination of rights created under a contract with the federal government is a question of federal law. S.R.A., Inc. v. Minnesota, supra at 564, 66 S.Ct. 749
 
 
 [3]
 We do not reach the question of whether the state can enforce its tax on the companies' possessory interests by imposing a lien on the national forest standing timber. See Wilson v. Cook, supra, 327 U.S. at 484, 66 S.Ct. 663
 
 
 [4]
 Most state courts which have considered Section 500 have held that payments under it are not in lieu of state taxes. Trinity Independent School District v. Walker County, 287 S.W.2d 717 (Tex.Civ.App.1956); Tree Farmers, Inc. v. Goeckner, 86 Idaho 290, 385 P.2d 649 (1963); Board of Supervisors v. Archer, 18 Cal.App.3d 717, 96 Cal.Rptr. 379 (1971). See also State of Alabama v. United States, 461 F.2d 1324, 198 Ct.Cl. 683 (1972)
 
 
 [5]
 Since no California court has ruled on this issue, we must try to decide it in the same way as the California Supreme Court would if it were faced with the same question. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)