[Civ. No. 2055. Fifth Dist. Aug. 13, 1975.]

UNITED STATES OF AMERICA et al., Plaintiffs and Respondents, v. COUNTY OF FRESNO, Defendant and Appellant.

**COUNSEL**

Robert M. Wash, County Counsel, and James B. Waterman, Deputy County Counsel, for Defendant and Appellant.

Dwayne Keyes, United States Attorney, Richard W. Nichols, Assistant United States Attorney, William B. Saxbe and Edward H. Levi, United States Attorneys General, Scott P. Crampton, Assistant United States Attorney General, Meyer Rothwacks, Chief Attorney, and Crombie J.D. Garrett, Attorney, for Plaintiffs and Respondents.

**OPINION**

**GARGANO, J.**—Appellant is the County of Fresno, a political subdivision of the State of California. Respondents are the United States of America and 17 individuals employed by the United States in the Forest Service of the Department of Agriculture; for convenience, we hereinafter will refer to the United States as the government and to the 17 employees as respondents.

Appellant appeals from a judgment of the Superior Court of Fresno County setting aside a decision of the Fresno County Board of Supervisors, sitting as the county board of equalization, upholding the possessory interest assessments made by the county assessor in connection with the government dwelling units respondents were occupying on the first Monday of March 1967 in parts of the Sequoia National Forest

and the Sierra National Forest located in Fresno County. The superior court first determined that respondents, as a matter of law, had no possessory interest in the dwellings they occupied and that the assessments were void for that reason. Then the court determined that the tax violated both the supremacy clause of the United States Constitution and the Act for the Admission of the State of California into the Union, contravened a federal "in lieu of taxes" statute and was discriminatory.

The court's determination that respondents did not own possessory interests in the government dwellings they occupied on the first Monday of March 1967 was error. In addition, the trial court's other rulings regarding the invalidity of the tax were erroneous. Accordingly, we reverse the judgment and remand the cause back to the lower court to determine whether the county assessor's valuations of the possessory interests were excessive; respondents also challenged the amount of the valuations placed upon their possessory interests by the assessor but, for obvious reasons, this issue was not reached by the trial judge.

The basic facts are undisputed. On the first Monday of March 1967, respondents were living in Class A, B and C dwelling units maintained by the government in the Sequoia National Forest and the Sierra National Forest. Respondents were charged a rental for the use of the premises comparable to rentals charged in nearby communities for similar dwellings, after reasonable adjustment for inconveniences; the rental was deducted from respondents' bimonthly paychecks. Respondents also paid for all utilities.

Under guidelines promulgated by the forest service, an employee's occupancy of a dwelling unit could be required when it was necessary to have the employee available to serve the public or to protect natural resources or government property; in all other cases, an employee could reside in a government-owned unit if one was available and if the employee so desired. The forest service could terminate the occupancy at any time or move the employee and his family from one unit to another so that a particular dwelling could be put to its most efficient and effective use. For example, during forest fires or other emergencies, the forest service could temporarily evict the employee and his family or it could move additional employees into the unit; the forest service could house two employees in the same residence for a substantial period of time; also, the forest service could require an unmarried employee to move out so a married employee and his family could be moved in.

Other examples of government control on the use of the dwelling units are as follows: The employee could not sublease or assign his "right" of occupancy; the front doors were equipped with locks which could be opened by a single master key; the employee could not make structural changes in the units; the employee's supervisor could enter the dwelling on official business relating to the unit, or if he suspected that damage was being done to the premises; government radios and communication equipment were kept inside some of the residences, and at times the equipment operated 24 hours a day; when official forest service facilities were closed, the public was encouraged to contact forest service employees at their dwelling units.

■ In this state the right to possess and use land or improvements, "except when coupled with ownership of the land or improvements in the same person," is treated as a possessory interest and is subject to taxation. (Cal. Const., art XIII, § 1; Rev. & Tax. Code, §§ 103, 107, 201; see *Kaiser Co. v. Reid,* 30 Cal.2d 610, 618 [184 P.2d 879]; *Mattson* v. *County of Contra Costa,* 258 Cal.App.2d 205, 209 [65 Cal.Rptr. 646].) Generally speaking, a possessory interest includes the right of a private individual or corporation to use government-owned tax exempt land or improvements, and this right is considered a private interest taxable by the state and its taxing agencies. (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 562 [290 P.2d 544]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 618; *People* v. *Shearer,* 30 Cal. 645, 655-657.) ■ But not all occupancies or uses of tax exempt government owned lands or improvements by private individuals are taxable as possessory interests. To give rise to a taxable possessory interest, the right of possession or occupancy must be more than a naked possession or use; it must carry with it, either by express agreement or tacit understanding of the parties, the degree of *exclusiveness* necessary to give the occupier or user something more than a right in common with others, or, in the case of employment, something more than the means for performing his employer's purpose, so that it can be said, realistically, that the occupancy or use substantially subserves an independent, private interest of the user or occupier. (*Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 618-620; *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey,* 43 Cal.App.3d 675, 684, 693 [117 Cal.Rptr. 874]; *Sea-Land Service, Inc.* v. *County of Alameda,* 36 Cal.App.3d 837, 843 [112 Cal.Rptr. 113]; *Board of Supervisors* v. *Archer,* 18 Cal.App.3d 717, 726-727 [96 Cal.Rptr. 379]; *Mattson* v. *County of Contra Costa, supra,* 258 Cal.App.2d 205, 209; *McCaslin* v. *DeCamp,* 248 Cal.App.2d 13, 17-19 [56 Cal.Rptr. 42]; see *Douglas Aircraft Co.* v.

*Byram,* 57 Cal.App.2d 311, 317 [134 P.2d 15]; cf. *San Francisco* v. *Anderson,* 103 Cal. 69, 70 [36 P. 1034].)

█ It seems clear to us that respondents' right to occupy and use the dwellings in question subserved, primarily, an independent, private purpose and that respondents had taxable possessory interests in the government owned improvements. (See *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey, supra,* 43 Cal.App.3d 675, 693.) The units had bedrooms, bathroom, kitchens and living areas and in every way were residential in character;[1] until such time as the forest service purported to exercise its right to terminate the occupancy or to remove the employee and his family temporarily, respondents had the exclusive right to use the premises as homes for themselves and their families; while government business was sometimes conducted from the units, the business was completely incidental to the main use of the property; respondents were charged a rental for the use of the property; they paid for all of the utilities; and preference was given to married employees, evidencing the residential character of the occupancy.

Admittedly, the rights of possession involved in this case were nontransferable and were terminable at the will of the government. However, the fact that a possessory right is nontransferable (*Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 620; *Mattson* v. *County of Contra Costa, supra,* 258 Cal.App.2d 205, 211) or is revocable at the will of the government (*McCaslin* v. *DeCamp, supra,* 248 Cal.App.2d 13, 17; *Rand Corp.* v. *County of Los Angeles,* 241 Cal.App.2d 585, 588 [50 Cal.Rptr. 698]; see *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 725-726) or is a condition of employment (*McCaslin* v. *DeCamp, supra,* 248 Cal.App.2d 13, 17-18) or to some extent must be shared with others (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 725-727) does not mean, per se, that there is no taxable possessory interest. These, as well as similar controls on the right of possession, are factors to be considered in fixing the value of the possessory interests. (*Sea-Land Service, Inc.* v. *County of Alameda, supra,* 36 Cal.App.3d 837, 841; *Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 725; *McCaslin* v. *DeCamp, supra,* 248 Cal.App.2d 13, 18.)

The same is true as to the other controls and restrictions imposed by the forest service on the use of the dwelling units, particularly where, as

[1]The Class A unit contained three or more bedrooms; the Class B unit was a two-bedroom home; the Class C unit had only one bedroom and was designed primarily for single persons.

here, they were exercised sparingly; while the forest service had the power to terminate the occupancy at any time or to evict the employee and his family during periods of emergency, or to bring another employee to live in the residence with an occupant and his family, the record shows that it seldom did so; the employees' supervisor had a key to the lock on the front doors but he used it infrequently, and private locks could be installed with his consent; even though respondents were restricted from making structural changes in the units, similar restrictions are not uncommon in private tenancies.

We quickly dispose of the government's and respondents' arguments in support of the trial court's other rulings.

■ They insist that the assessments which were made by the assessor are in contravention of the supremacy clause of the United States Constitution. (U.S. Const., art VI, cl. 2.) A possessory interest assessment is not made against the government or government property; the assessment is against the private citizen, and it is the private citizen's usufructuary interest in the government land and improvements alone that is being taxed. (*City of Detroit* v. *Murray Corp.,* 355 U.S. 489, 494-495 [2 L.Ed.2d 441, 446-447, 78 S.Ct. 458, 461-462]; *United States* v. *Township of Muskegon,* 355 U.S. 484, 486-487 [2 L.Ed.2d 436, 438-439, 78 S.Ct. 483, 485]; *United States* v. *City of Detroit,* 355 U.S. 466, 469-470 [2 L.Ed.2d 424, 426-428, 78 S.Ct. 474, 476]; *General Dynamics Corp.* v. *County of L.A.,* 51 Cal.2d 59, 63 [330 P.2d 794].)

They argue that assessments would interfere with a governmental function because the forest service would have to revise its rent schedules and submit to county inquiries concerning "the various specific restrictions and aspects of the federal employer-employee relationship" and because the tax would create morale problems among the federal employees. Essentially similar arguments were disposed of by the United States Supreme Court in *Penn Dairies* v. *Milk Control Comm'n.,* 318 U.S. 261, 270-271 [87 L.Ed. 748, 754, 63 S.Ct. 617, 621]. In that case the high court stated: "We have recognized that the Constitution presupposes the continued existence of the states functioning in coordination with the national government, with authority in the states to lay taxes and to regulate their internal affairs and policy, and that . . . state taxation inevitably imposes some burdens on the national government of the same kind as those imposed on the citizens of the United States within the state's borders, [citation]. And we have held that those burdens, save as Congress may act to remove them, are to be regarded as the normal

incidents of the operation within the same territory of a dual system of government, and that no immunity of the national government from such burdens is to be implied from the Constitution which established the system, [citation]." (See also, *Graves* v. *N. Y.* ex rel. *O'Keefe*, 306 U.S. 466, 487 [83 L.Ed. 927, 937, 59 S.Ct. 595, 601-602, 120 A.L.R. 1466].)

■ They allege that the assessments violate section 3 of the Act for the Admission of the State of California into the Union because they interfere ". . . with the primary disposition of the public lands of the United States to its own employees for governmental purposes." The term "primary disposal" as used in section 3 merely means the transmission or parting of title (*Oury* v. *Goodwin*, 3 Ariz. 255 [26 P. 376, 377]; *Topeka Commercial Security Co.* v. *McPherson*, 7 Okla. 332 [54 P. 489, 491]) or the ". . . disposal of lands by the United States by transfer through patent or deed executed by its officers under authority of Congress." (*State* v. *Holthusen*, 261 Minn. 536 [113 N.W.2d 180, 188]; see also *United States* v. *California*, 332 U.S. 19, 42 [91 L.Ed. 1889, 1901, 67 S.Ct. 1658, 1671] (dissenting opinion of Justice Reed); *Christianson* v. *King County*, 239 U.S. 356 [60 L.Ed. 327, 36 S.Ct. 114, 117-118]; *Lux* v. *Haggin*, 69 Cal. 255, 336, 4 P. 919, 10 P. 674].)

■ They maintain that under section 500 of title 16 of the United States Code the county receives an in lieu tax for property located in national forests, and hence the tax against respondents' possessory interests amounted to a double taxation. Payments made by the United States government under section 500 of title 16 are not in lieu of taxes; there is nothing in the statute stating that the payments to the county are in lieu of taxes. The statute does not bar the imposition of taxes upon possessory interests, held by a private individual or corporation, in improvements located in national forests. (*Board of Supervisors* v. *Archer, supra*, 18 Cal.App.3d 717, 727; see also *International Paper Co.* v. *County of Siskiyou* (9th Cir.) 515 F.2d 285, 289; *Tree Farmers, Inc.* v. *Goeckner*, 86 Idaho 290 [385 P.2d 649, 651]; *Bartlett* v. *Collector of Revenue* (La. App.) 285 So.2d 346, 348; *Trinity Independent School Dist.* v. *Walker County* (Tex. Civ. App.) 287 S.W.2d 717, 722.)

They insist that the taxes involved in this case are discriminatory because under section 4654 of the Public Resources Code counties receive in lieu taxes in connection with possessory interests in state forests; respondents assume that because the counties receive in lieu

taxes in connection with state forests they cannot assess possessory interests in federal lands and improvements located within national forests.

Section 4654 expressly provides that the in lieu tax shall be based only upon the value of the forest lands used for the purpose of continuous commercial forest production and not upon forest land used for any other purpose, including any improvements on such land. Also, the fact that the state has elected to pay an in lieu tax in connection with state forests does not prevent the county assessor from taxing possessory interests in national forests in which the government has not elected to pay in lieu taxes in connection with those interests. (*International Paper Co.* v. *County of Siskiyou, supra* (9th Cir.) 515 F.2d 285, 288-289.)

The judgment is reversed, and the cause is remanded to the superior court to determine whether there was substantial evidence to support the board of supervisors' decision regarding the amount of the assessed values placed upon respondents' possessory interests. (See *Westlake Farms, Inc.* v. *County of Kings,* 39 Cal.App.3d 179, 183-185 [114 Cal.Rptr. 137].)

Brown (G. A.), P. J., and Franson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 9, 1975.