**UNITED STATES of America, Plaintiff,**

v.

**COUNTY OF HUMBOLDT, CALIFORNIA, Raymond J. Flynn, Humboldt County, California, Tax Assessor, and Stephen A. Strawn, Humboldt County, California, Treasurer and Tax Collector, Defendants.**

No. C–77–1749–CBR.

United States District Court,
N. D. California.

Feb. 9, 1978.

---

G. William Hunter, U. S. Atty., John M. Youngquist, Asst. U. S. Atty., San Francisco, Cal., M. Carr Ferguson, John J. McCarthy, Jr., William L. Shraberg, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Raymond W. Schneider, County Counsel, John L. Cook, Deputy County Counsel, Eureka, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This is an action instituted by the United States seeking a declaratory judgment that the County of Humboldt, California (the "County"), and officials thereof are barred from imposing a tax on active-duty military personnel by virtue of such personnel's occupancy of Government-owned military housing, situated in the County, to which such personnel are assigned, and injunctive relief enjoining the defendants from proceeding to collect or further assess such a tax. The County has moved to dismiss or, in the alternative, for summary judgment. The Government has also moved for summary judgment. Arguments on the motions were heard on December 15, 1977. Having carefully considered the arguments of counsel and the legal memoranda filed in support of and in opposition to the motions, the Court concludes that there is no genuine issue as to any material fact and that the United States is entitled to summary judgment in its favor as a matter of law.[1]

## I. FACTUAL BACKGROUND

This action arises out of the County's attempt to assess and collect ad valorem taxes on the possessory interests allegedly held by various military personnel in their assigned quarters at the United States Naval Facility Centerville Beach, Ferndale, California (the "Ferndale Facility"). On or about September 14, 1976, the Commander of the Ferndale Facility received a letter from the County's Tax Assessor wherein it was stated that the County would be assessing as of March 1, 1976, for the fiscal year beginning July 1, 1976, and ending June 30,

1. The Court further concludes that dismissal of the case on the ground asserted by the County is not proper. The County contends that the lawsuit should be dismissed pursuant to the Supreme Court's holding in *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). The principles expressed by the Supreme Court in *Trainor*, however, are simply not applicable to the instant case since there is no "litigation between the *same parties* and raising the same issues" pending in a California court. 431 U.S. at 440, 97 S.Ct. at 1916 (emphasis added). The County argues that there is pending state litigation since certificates of delinquency have been filed against the individual *military personnel pursuant to section 3101 of* the California Revenue & Taxation Code. Assuming that such certificates have been filed and that state litigation is therefore pending, there is still no pending litigation between the County and the United States; the collection actions pursuant to section 3101 involve only the County and the individual military personnel.

1977, possessory interest taxes against military service personnel by virtue of such personnel's occupancy of Government-owned military housing situated within the County (the "Ferndale military housing").[2] During November of 1976, five military service members, each of whom occupied a unit of the Ferndale military housing as of March 1, 1976, received from the County "Unsecured Tax Statements," each of which indicated that taxes were due from each of the addressees listed thereon for the County's 1976–1977 fiscal year. On or about June 22, 1977, the Commander of the Ferndale Facility received a letter from the County's Treasurer and Tax Collector wherein it was indicated that if the taxes due from the five military service members to whom the "Unsecured Tax Statements" were sent were not paid by August 31, 1977, "summary judgments" would be filed against the addressees.[3]

The Commander of the Ferndale Facility received 19 additional "Unsecured Tax Statements" on or about July 12, 1977. These statements were addressed to military service members assigned to units of the Ferndale military housing as of March 1, 1976, and each statement indicated that taxes were due from each of the addressees listed thereon for the County's 1976–1977 fiscal year. These tax statements were forwarded by Navy Department employees to the addressees' then known forwarding addresses. On or about July 26, 1977, the Commander of the Ferndale Facility received a second letter from the County's Treasurer and Tax Collector wherein it was indicated that if the taxes due from these service members were not paid by August 31, 1977, "summary judgments" would be filed against them also.

The Government filed this lawsuit on August 9, 1977, seeking both declaratory and injunctive relief. The Government contends that the County's tax on military personnel assigned to the Ferndale military housing is unlawful for the following reasons: (1) the tax constitutes a direct interference with the operations of the United States and is therefore constitutionally prohibited; (2) the tax is barred by § 511 of the Housing Act of 1956, 42 U.S.C. § 1594 note; and (3) the tax is barred by § 574 of

2. California Constitution, art. 13, § 1 provides in part that

"[u]nless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable * * *.

"(b) All property * * * shall be taxed in proportion to its full value."

Section 107.1 of the California Revenue & Taxation Code provides in part:

"The full cash value of a possessory interest, when arising out of a lease of exempt property, is the excess, if any, of the value of the lease on the open market, as determined by the formula contained in the case of *De Luz Homes, Inc. v. County of San Diego* (1955), 45 Cal.2d 546 [290 P.2d 544], over the present worth of the rentals under said lease for the unexpired term thereof.

"A possessory interest taxable under the provisions of this section shall be assessed to the lessee on the same basis or percentage of valuation employed as to other tangible property on the same roll.

"This section applies only to possessory interests created prior to the date on which the decision of the California Supreme Court in *De Luz Homes, Inc. v. County of San Diego* (1955), 45 Cal.2d 546, [290 P.2d 544] became final. It does not, however, apply to any of such interests created prior to that date that thereafter have been, or may hereafter be, extended or renewed, irrespective of whether the renewal or extension is provided for in the instrument creating the interest."

Section 107 defines "possessory interests" as:

"(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person.

"(b) Taxable improvements on tax-exempt land."

3. Pursuant to § 3101 of the California Revenue & Taxation Code, the official collecting taxes may file a certificate of delinquency with the county clerk if a tax is not paid by the last day of the month succeeding the delinquency date. Section 3102 provides that the county clerk, immediately upon the filing of the certificate of delinquency, shall enter a judgment for the county against the assessee in the amount of the tax, penalty, and interest set forth in the certificate. Under § 3103, an abstract or copy of the judgment is then recorded in the office of the county recorder and, from the time of the recording, the amount of the tax, penalty, and interest set forth constitutes a lien upon all property of the assessee in the county, owned by him or afterward, and before the lien expires, acquired by him.

the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, 50 U.S.C. Appendix § 574. The Court does not reach the merits of the Government's contentions, however, since the tax assessed by the County is not authorized under California law and can be declared invalid on that ground.[4]

## II. TAXABLE POSSESSORY INTERESTS

Under California law,

"a possessory interest includes the right of a private individual or corporation to use government owned tax exempt land or improvements, and this right is considered a private interest taxable by the state and its taxing agencies. [Citations omitted.] But not all occupancies or uses of tax exempt government owned lands or improvements by private individuals are taxable as possessory interests. To give rise to a taxable possessory interest, the right of possession or occupancy must be more than a naked possession or use; it must carry with it, either by express agreement or tacit understanding of the parties, the degree of *exclusiveness* necessary to give the occupier or user something more than· a right in common with others, or, in the case of employment, something more than the means for performing his employer's purpose, so that it can be said, realistically, that the occupancy or use substantially subserves an independent, private interest of the user or occupier. [Citations omitted.]" *United States v. County of Fresno*, 50 Cal. App.3d 633, 123 Cal.Rptr. 548, 550–551 (1975), aff'd on other grounds, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977).

In *United States v. County of Fresno*, *supra*, the California Court of Appeal held that the United States Forest Service employees had "taxable possessory interests" in governmental dwelling units they were occupying in portions of national forests, finding that "the dwellings in question subserved, primarily, an independent, private purpose." 123 Cal.Rptr. at 551. The employees' occupancy and use of the dwelling units was not simply a means for performing the Forest Service's purpose; "while government business was sometimes conducted from the units, the business was completely incidental to the main use of the property." *Ibid.* The military personnel's occupancy of assigned quarters is clearly distinguishable from the Forest Service employees' occupancy of dwelling units. Thus, although no California court has yet decided whether military personnel have a taxable possessory interest in their assigned quarters, it is clear to the Court that California courts, if confronted with the issue, would hold that military personnel do not have such an interest.

Under the standards set forth by the California Courts of Appeal in *United States v. County of Fresno*, the military personnel have a taxable possessory interest only if their occupancy of assigned quarters is "something more than the means for performing [their] employer's purpose, so that it can be said, realistically, that the occupancy or use substantially subserves an independent, private interest." 123 Cal. Rptr. at 551. California courts would undoubtedly look to federal law in determining whether military personnel have a private interest in their assigned quarters.[5] And, under federal law, the quarters furnished to military personnel are recognized as being solely for the benefit of the United States, not for the benefit of the personnel. *See Jones v. United States*, 60 Ct.Cl. 552,

---

**4.** Although the Government at no time has argued that the tax is invalid under state law, the Court believes it proper to rest its decision on state law grounds. No authority need be cited for the proposition that a court not rest its decision on constitutional grounds when a case can be disposed of on statutory grounds. The fact that the parties raise only constitutional grounds cannot bar a court from deciding a case on dispositive statutory grounds. Parties cannot by default or design make a court unnecessarily reach constitutional grounds.

**5.** California courts have not hesitated to look to federal law in deciding state law questions. *See, e. g., Standard Oil Co. of California v. Johnson*, 19 Cal.2d 104, 119 P.2d 329 (1941), *rev'd and remanded*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942).

569 (1925).[6]  The reason why assigned quarters are recognized as being solely for the benefit of the United States was well stated by the Court of Claims:

"[P]ublic quarters for the housing of enlisted men and officers is as much a military necessity as the procurement of implements of warfare or the training of troops.  Congress has appropriated vast sums of money to establish permanent military posts and stations throughout the country, and in not one but all Army appropriations provision is of course made for the erection of barracks, officers' quarters, and every other necessary building to maintain, house, and properly care for the enlisted men and officers of the post or station.  We need not assert that an officer's duties require his physical presence at his post or station; his service is continuous day and night; his movements are governed by orders and commands, by military law; troops are to be trained, discipline is to be enforced, and more than one exigency of the military service requires the officer to live with his command.  In addition to what has been said, many officers may be and are required to keep and render a variety of official reports, perform certain prescribed military duties during both day and night.  All these and many more considerations, of which we confess an unfamiliarity, make it imperative upon the part of the Government to provide housing facilities for troops and officers of the Army if an army is to be maintained at all.  Therefore it seems to us that military quarters for both the enlisted men and officers of the Army are no more than an integral part of the organization itself.  They are, so to speak, units of the military plant, the indispensable facilities for keeping the Army intact and maintaining it as such, as much so as the.

crude shelter provided for a watchman at a railroad station, or the lonely habitation of a lighthouse keeper.  The officer is not paid a salary and furnished a house to live in for his services; he is, on the contrary, paid a salary *to live* in the quarters furnished.

"But we are told that if the Government did not furnish the officer quarters he would have to incur the expense of procuring the same.  Such an argument is absolutely devoid of merit.  The inherent organization of the Military Establishment of the United States refutes it.  Imagine a military post uninhabited by officers.  Speculation as to possibilities and conditions in the face of long recognized and firmly established status and organization of the Army are indeed idle.  An Army officer's rights and privileges under the law are not to be gauged by comparisons.  The Supreme Court said, in *United States v. Phisterer*, 94 U.S. [219] 224: [24 L.Ed. 116]

" 'Quarters are expected to be furnished by the Government to its officers; when it can not thus furnish, it allows them to be obtained otherwise and pays a monetary compensation therefor called commutation.  This upon the assumption, first, that the officers are actually engaged in the public service; and, second, that such quarters are necessary to the discharge of their duty.' "  60 Ct.Cl. at 569–570.

In light of applicable federal law, California courts would undoubtedly find that military personnel do not have a taxable possessory interest in their assigned quarters.  Moreover, if military personnel were deemed to have a taxable possessory interest, the resulting tax would be unconstitutional,[7] and California courts would un-

---

**6.** Congress itself has distinguished the basic allowance for quarters received by members of the armed forces, and the value of assigned quarters, from the compensation of members of the armed forces.  Compare 37 U.S.C.. § 403 with 37 U.S.C. § 203.  And, under applicable Treasury Regulations, subsistence and uniform allowances granted to officers and enlisted personnel of the armed forces, the amounts received by them as commutation of quarters, and the value of quarters or subsistence furnished to them are specifically excluded from gross income.  *See* Treas.Reg. § 1.61–2(b).

**7.** Property owned by the United States cannot be taxed by a state or local government without the consent of the United States.  *Rohr*

doubtedly hesitate to interpret a statute in such a way so as to render its application unconstitutional.

The Court therefore finds the tax assessed by the County invalid under California law.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is granted.

IT IS HEREBY FURTHER ORDERED that defendants' motion to dismiss or for summary judgment is denied.

IT IS HEREBY FURTHER ORDERED that counsel for plaintiff shall prepare an appropriate form of judgment, obtain approval of counsel for defendants as to form, and submit it to the Court for execution within ten (10) days of the date of this order.

Corp. v. San Diego County, 362 U.S. 628, 634, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960); Van Brocklin v. State of Tennessee, 117 U.S. 151, 175, 6 S.Ct. 670, 29 L.Ed. 845 (1886). Since military personnel do not derive any personal benefit from their assigned quarters, there is no "possession or use" for which they can be taxed. See generally, United States v. County of Fresno, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). Only the United States has any interest in the possession or use of the property. Any tax upon the use or occupancy of the property would therefore be a tax upon the United States and unconstitutional in the absence of congressional consent.